2025 IL App (1st) 242157

SIXTH DIVISION

March 28, 2025

No. 1-24-2157B

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 24 CR 8646 |
| | ) | |
| JAYQUAN SCHWEDLER, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Tailor and Justice Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Jayquan Schwedler appeals from the circuit court's grant of the State's petition

for pretrial detention pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code)

(725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1,

2023), and Public Act 102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness

Act (Act). On appeal, he argues the State's petition was untimely, and that even if the petition was

timely, the court erred in ordering his detention. As set out below, we reject Schwedler's claim that the State's petition was untimely but reverse the court's order and remand for a new hearing under the Code because the court failed to conduct an appropriate hearing on the State's petition.

¶ 2                               BACKGROUND

¶ 3    Schwedler was arrested on August 6, 2024, and charged with reckless conduct with great bodily harm, following an incident on Chicago Transit Authority (CTA) platform that led to the electrocution of the victim, Dyron Anderson, on a rail. Schwedler's arrest occurred at 2:56 a.m., and the State made its final charging decision the next day, August 7, at 8:30 p.m. Schwedler first appeared before the circuit court on August 8, 2024, on the 12:30 p.m. call.

¶ 4    At that appearance, Schwedler was released pending trial, with conditions.[1] During the proceedings, the circuit court simultaneously addressed Schwedler and two other individuals also charged in the incident, stating, "The State is not seeking to detain you on these new charges, so we're going to set the conditions for your release; however, for one of you, and that's [Schwedler], it looks like you were already on [probation] *** [s]o you're going to be in custody at least until tomorrow. You're going to have to see the judge whose probation you violated." The state's attorney responded to the court's question "And just so the record's clear, you're not asking me to detain of these defendants?" with "That's correct Judge." The court continued, "Despite somebody having been electrocuted?" and the prosecutor confirmed, "Yes, your Honor."

¶ 5    Anderson died on August 14, 2024. On September 3, 2024, the grand jury indicted Schwedler on involuntary manslaughter and mob action in case No. 24-CR-8646, the present case.

---

[1]Schwedler was on probation in two other matters at the time of this arrest, case Nos. 23-CR-11553 and 21-CR-14584. His separate appeal from the pretrial detention order in those matters is resolved in another order of this court, issued February 28, 2025, in case No. 1-24-1895B.

The State filed the indictment on September 9, 2024, and Schwedler was arraigned on the new matter on September 17, 2024.

¶ 6    On September 26, 2024, the State filed a petition for pretrial detention. In a written attachment to the petition, the State alleged that on August 6, Anderson boarded a CTA red line train heading south. Around 2:25 a.m., Schwedler and three other individuals entered the train, and one of the individuals pinned Anderson against a wall. Anderson fled into an adjoining car, with Schwedler and the three others in pursuit. During the chase, one of the individuals kicked Anderson in the back. When the train stopped and the doors opened, Anderson exited and fled, but fell onto the train tracks as he ran, and his head struck an electrified rail. Anderson received treatment at the hospital before passing away from his injuries on August 14, 2024.

¶ 7    At Schwedler's September 26 court appearance, the assistant public defender representing him stated, "I believe he has already been arraigned. I did receive a petition to detain my client on this matter, he is already I believe detained on his [probation violations], we would not waive notice on that as well. And the October 18th date is good for us." After which the circuit court stated "Motion defendant [October 18, 2024] in person, 9:30 for detention hearing."

¶ 8    On October 7, Schwedler moved to strike the petition, arguing it was untimely. In support, he maintained that because he was eligible for pretrial detention on the charge of reckless conduct with great bodily harm in case No. 24111086101, the Code required the State to file its petition within 21 days of his August 8, 2024, release on that matter, which it did not do. He argued the superseding indictment did not reset the clock because his new case also arose from the CTA platform chase.

¶ 9    The State responded, arguing reckless conduct causing great bodily harm "is not a specifically enumerated offense under any subsection of [the Code] for which the People could

3

have sought pretrial detention." It further argued that the 21-day clock for case No. 24-CR-8646 started on September 17, the day of his first appearance, making the September 26 pretrial detention petition filing timely. In support, it contended the Code "does not discuss the situation presented in the instant case where the charge defendant was originally arrested on was superseded by indictment on a separate charge." The State continued that Anderson's death was "a change of material circumstances," and the Code "was not intend[ed] to elevate form over substance by engaging in unnecessary procedure." It argued, "whether [the State] could or could not have filed a petition when defendant was charged with reckless conduct is irrelevant. What matters is that there has been a material change in circumstances resulting in a new charge."

¶ 10 During Schwedler's court appearance on October 18, 2024, the circuit court prompted the parties that there were two filings for resolution that day: (1) Schwedler's motion to strike, and (2) the State's pretrial detention petition. The court heard argument on the motion to strike first. The assistant public defender representing Schwedler argued, "The statute is clear. It's about release, arrest and release. Mr. Schwedler was arrested August 6th, released August 8th. The State had until August 29th to file. They did not do so." The state's attorney responded that it was unclear whether Schwedler could be detained on the initial charge, and Anderson was expected to live at the time of August 8 hearing. The state's attorney continued "it raises a very unusual and absurd result of [*sic*] if the State is going to be able to take advantage of new information, having to file a petition that would be likely to fail at first appearance court just to preserve an opportunity with new information *** to file a second or subsequent petition. There's basically a hole in the statute for this circumstance." In rebuttal, the assistant public defender argued, "The State's attempt to read in what charging decisions were made later mean that there's somehow a new case as a result

is nowhere in the statute. It's about arrest and release for the conduct at issue and solely for the conduct at issue on August 6."

¶ 11   The circuit court concluded argument at this point and stated, "the State has shown by clear and convincing evidence that proof is evident or the presumption great that" Schwedler committed a detainable offense. Moreover, the court found, Schwedler posed a real and present threat if released pretrial because he "and two others chased the victim in this case on a Chicago transit El train and, ultimately, the victim left the train. The chase was, in some level, still going on and the defendant—or the victim fell or ran off the El platform and hit the third rail. Initially, he did not die but, ultimately, that action resulted in his death." The court continued that less restrictive conditions could not mitigate the threat because "the defendant was on probation for two cases, one of which was a Class 1 felony."

¶ 12   The assistant public defender asked, "is there a ruling on the defense motion to strike," to which the circuit court responded, "Yeah. The defense motion to strike is denied." Defense counsel then stated the State had not made a proffer, and he was not aware the court would proceed immediately "into the petition itself in substance." The court responded, "I didn't bifurcate the ruling into separate things. So my rulings stand."

¶ 13   Schwedler filed his motion for relief on October 21, 2024, reiterating his argument that the State's petition was untimely. He also claimed the circuit court improperly failed "to bifurcate the Motion to Strike and the substance of the State's Petition" for pretrial detention, preventing defense counsel from presenting mitigating evidence, specifically video evidence of the incident. Schwedler further complained that he did not receive an initial court appearance within 48 hours of his August 6, 2024, arrest, and the court did not hold a pretrial detention hearing on the State's September 26, 2024, petition within the time provided by the Code. He also challenged the court's

5

substantive findings that (1) the presumption was great or proof was evident that he committed involuntary manslaughter, (2) no lesser restrictive conditions could mitigate the threat he posed, and (3) he posed a high likelihood of willful flight. Finally, he argued the court's order was insufficient per the Code's requirements because it did not summarize why less restrictive conditions would not mitigate his threat.

¶ 14    At the hearing on the motion for relief, the assistant public defender reiterated his arguments on the untimeliness of the State's petitions, and further contended the circuit court denied him the opportunity to present mitigating evidence.

¶ 15    The State responded that its proffer was sufficient regarding whether the proof was evident and presumption great that Schwedler committed involuntary manslaughter and posed a real and present threat. Counsel continued that the fact Schwedler allegedly committed the offense while on probation, and his violation of that probation led to someone's death, showed no less restrictive conditions could mitigate the threat he posed.

¶ 16    The circuit court denied the motion for relief, stating,

"I'm going to stand on my original rulings. I continue to deny [the defense's] request to play the video. I don't think it will change anything. Again, it's just a factual dispute on what happened on the el train. I'm not getting into that. I take the State's petition on its face and the State has outlined ample reasons why defendant poses a serious threat to the community, especially in light of the fact that he was on two probations; one a class 1 felony, a fentanyl case, and then a class 2 felony, a burglary case. Defense motion for relief is denied."

This appeal followed.

¶ 17                                JURISDICTION

¶ 18    The circuit court denied Schwedler's motion for relief on October 21, 2024, and Schwedler filed his notice of appeal that same day. Accordingly, absent any indication Schwedler has been convicted of his current charges, this court has jurisdiction pursuant to Illinois Supreme Court Rule 604(h)(2), (3) (eff. Apr. 15, 2024) and section 110-6.1(j) of the Code (725 ILCS 5/110-6.1(j) (West 2022)).

¶ 19                                      ANALYSIS

¶ 20    On appeal, Schwedler first argues the State's petition for pretrial detention was untimely. He further contends that should this court find the State's petition was timely, reversal is still necessary because the circuit court erred in ordering his detention pursuant to that petition because of procedural violations, specifically (1) his first appearance before the court was not within 48 hours of his arrest, (2) the hearing on the State's petition for pretrial detention did not occur within 48 hours of filing, and (3) the court failed to conduct an appropriate pretrial detention hearing on October 18, 2024. Finally, he raises claims as to the substance of the court's detention findings and its October 18, 2024, order, arguing (1) the State failed to show the proof was evident or presumption great that he committed involuntary manslaughter, (2) the State failed to show less restrictive conditions could not mitigate the threat he posed, (3) the court's order failed to explain why less restrictive conditions could not mitigate his threat, and (4) the court erred by detaining him on the grounds that he posed a flight risk.

¶ 21    We first consider the timeliness of the State's petition. Pursuant to the Code, a criminal defendant is presumed eligible for release pending trial and cannot be detained unless the State files a petition for pretrial detention. See *id.* § 110-6.1(a)(1)-(8), (e). The Code requires, in relevant part, that:

> "A petition may be filed without prior notice to the defendant at the first appearance before a judge, or within the 21 calendar days *** after arrest and release of the defendant upon reasonable notice to defendant; provided that while such petition is pending before the court, the defendant if previously released shall not be detained." *Id.* § 110-6.1(c)(1).

The Code further states, "If the State seeks to file a second or subsequent petition under this Section, the State shall be required to present a verified application setting forth in detail any new facts not known or obtainable at the time of the filing of the previous petition." *Id.* § 110-6.1(d)(2). The State may only move for pretrial detention for defendants charged with certain offenses enumerated in the Code, one of which includes any felony that "involves the threat of or infliction of great bodily harm or permanent disability or disfigurement." *Id.* § 110-6.1(a)(1.5). Involuntary manslaughter is also a detainable offense. *Id.* § 110-6.1(a)(6)(P).

¶ 22     Schwedler argues that the State's petition was untimely because he was arrested on August 6, 2024, pursuant to the CTA platform chase, and the State chose not to move for his pretrial detention at his first court appearance on August 8. This constituted his day of "release" per the Code and started the statutory 21-day clock within which the State had to file a detention petition. That period then expired on August 29, rendering the State's September 26 petition untimely.

¶ 23     The State responds that because Schwedler was charged in a new case with involuntary manslaughter and mob action via superseding indictment following Anderson's death on August 14, it is entitled to a new timetable under the Code for the new case. The grand jury returned the indictment on September 3, the State filed it on September 9, and Schwedler first appeared in court at his arraignment on September 17. Based on this sequence of events, the State maintains that September 17 was the date of Schwedler's "release" on the present case, as it did not move for

pretrial detention at that hearing, which started the 21-day clock. This makes the September 26 petition well within the required period.

¶ 24　The operative question for this court to resolve is whether, per the Code, the State reset the 21-day clock by filing its superseding indictment. This presents an issue of statutory interpretation, which we review *de novo*. *People v. Milner*, 2024 IL App (1st) 241284, ¶ 27.

¶ 25　We find that the State's petition was timely because the superseding indictment constituted a new case that alleged a new, detainable offense, for which the Code then permitted the State to determine whether to request pretrial detention at either Schwedler's first court appearance or within 21 days of his release. The Code does not directly address this scenario, but its plain language, interpreted alongside the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/1-1 *et seq.* (West 2022)), dictates this result. A new criminal case "commenc[es]" when an indictment is returned. *Id.* § 2-16. Schwedler was indicted on involuntary manslaughter and mob action on September 3. This created a new case that charged Schwedler utilizing facts that were not available when he was charged with reckless conduct causing great bodily harm in case No. 24111086101. While a new "arrest" may not have occurred because Schwedler was already detained per his probation matters, a new arraignment did—on September 17. This constituted Schwedler's first court appearance on case No. 24-CR-8646. See 725 ILCS 5/113-1 (West 2022) (arraignment is a procedure in which a defendant is "called into open court, informed of the charge against him, and called upon to plead thereto"). Applying section 110-6.1(c)(1) of the Code (*id.* § 110-6.1(c)(1)) to this procedural posture, the State, if it wanted to detain Schwedler pretrial on case No. 24-CR-8646, had to either file a petition for pretrial detention on September 17, or within 21 days of his "release" for purposes of the new case, which occurred on that date because the State decided not to file a petition at his first appearance. See *People v. Bradford*, 2023 IL App (1st) 231785, ¶¶ 23-

25 (a defendant is considered "released" for purposes of a specific case when a court orders his release in that case). The State filed its petition nine days later—well within the Code's timeframe.

¶ 26    Section 110-6.1(d)(2) of the Code (725 ILCS 5/110-6.1(d)(2) (West 2022)) supports this interpretation. Under that section, the State may seek to file a second or subsequent petition for pretrial detention if it can demonstrate it learned of "new facts not known or obtainable at the time of the filing of the previous petition." *Id.* Applied here, this section demonstrates that in passing the Act, the legislature understood the full universe of relevant facts might not be immediately available to the State when making its initial pretrial detention decision, and accordingly it should have the ability to seek pretrial detention later if new, relevant information emerges while a case is pending. See *id.* Anderson's unfortunate passing was a new fact that could reasonably affect the State's calculus regarding whether to seek pretrial detention, and the intent of the Act as demonstrated through this section of the Code supports our conclusion that the State can request pretrial detention based on the new information.

¶ 27    Schwedler's arguments for untimeliness are based on the premise that case No. 24-CR-4686 is the same as case No. 24111086101. This argument fails because the two prosecutions constitute two different cases. Besides having different case numbers and different charges alleging different elements, the cases are based on different facts, with the latter case based in significant part on a fact not available to the State at the time of initial charging and Schwedler's first court appearance on case No. 24111086101. The Criminal Code section on compulsory joinder is helpful here—compulsory joinder applies when "several offenses are known to the [prosecutor] at the time of commencing the prosecution." 720 ILCS 5/3-3(b) (West 2022). Involuntary manslaughter was not known to the State at the time of the first case commenced; it was not until Anderson's death on August 14 that the State could attempt to pursue charges with death as an element.

¶ 28    To account for this fundamental flaw, Schwedler argues the September 3 indictment was not based on new "conduct" unknown to the State at the time of charging in case No. 24111086101, as both cases arose from the August 6 CTA platform chase, and this should be the operative consideration for applying section 110-6.1(c)(1) of the Code (725 ILCS 5/110-6.1(c)(1) (West 2022)). This argument fails because the Code does not delineate between first court appearances for new cases based on whether a defendant was previously charged for the same incident, and we will not interpret a statute to include additional requirements not supported by the text. See *People v. Glisson*, 202 Ill. 2d 499, 505 (2002). As discussed above, the superseding indictment charged Schwedler with a crime he could not have been charged with at the time of the initial appearance on his first case, based on information learned by the State only after the initial charging and pretrial detention decisions and for which he had an initial appearance. We find that per the intent of the legislature, unambiguously explained in section 110-6.1(c)(1) and (d)(2) of the Code (725 ILCS 5/110-6.1(c)(1), (d)(2) (West 2022)), the State was permitted to file an initial pretrial detention petition within 21 days of the September 17 arraignment, even if the new case arose from the same general "conduct" of a previous case.

¶ 29    Schwedler also contends that the new fact of Anderson's death should not be determinative because Schwedler was detainable on the reckless conduct with great bodily harm charge in the first case. Even if we concede (without holding) that Schwedler was detainable in his first case on that charge, however, this would not change the result. The Code does not require the State to pursue detention any time a defendant is eligible for it, and this indeed is designed to ensure the State does not endeavor to pursue detention automatically. The State must also take into account whether it can make the evidentiary showings required by section 110-6.1(e) of the Code. See *id.* § 110-6.1(e). In permitting this discretion, the Code asks that prosecutors make decisions based on

the facts available to them at the time—"the specific articulable facts of the case"—and specifically contemplates the potential that these facts will change as the discovery process unfolds and investigation continues before trial. See *id.* § 110-6.1(d)(1)-(2), (e). This case is a prime example—when the State chose not to pursue pretrial detention on August 8, it did so with the knowledge that Anderson survived and without the benefit of having weeks to investigate and further review the evidence (which includes a video of the incident, the availability of which on August 8 is unclear). When the facts changed, leading to a new case being filed, the State then reconsidered Schwedler's pretrial detention status based on the updated information.

¶ 30    Schwedler's next claim is his detention should be reversed because the State failed to bring him to court within 48 hours of his arrest. This presents another question of statutory interpretation, which we review *de novo*. *People v. Taylor*, 2023 IL 128316, ¶ 45. He also raises this claim in case No. 1-24-1895B, and our analysis of why the claim fails is the same in both orders:

¶ 31    The record shows Schwedler's arrest occurred on August 6 at 2:56 a.m., and he was not brought before the circuit court until August 8, 2024, on its 12:30 p.m. call. The State finalized its charging decision at 8:30 p.m., on August 7, 2024.

¶ 32    We find that Schwedler is not entitled to relief because he appeared approximately 10 hours after the 48-hour period expired. Other panels of this court have addressed, and rejected, nearly identical claims in situations where the defendant was brought to court on the second day following arrest, but outside of 48 hours, after the State's charging decision was made after court closed on the previous day. See *People v. Garduno*, 2024 IL App (1st) 240405-U, ¶¶ 9-13; *People v. Williams*, 2024 IL App (1st) 232219-U, ¶¶ 27-29. In so finding, the *Williams* court explained that the inclusion in the statute of the phrase " 'without unnecessary delay' " provided latitude with respect to the 48-hour requirement, quoting *People v. Ballard*, 206 Ill. 2d 151, 177 (2002).

*Williams*, 2024 IL App (1st) 232219-U, ¶ 29. In *Ballard*, our supreme court explained that so long as presentment was done with "reasonable promptness," timeliness requirements on this point were met. *Ballard*, 206 Ill. 2d at 177. We agree with those resolutions and adopt their reasoning. Schwedler was not officially charged until the evening of August 7, and he appeared in court the next day on the 12:30 p.m. call. In accordance with *Ballard*, *Williams*, and *Garduno*, we find this constituted "reasonable promptness."

¶ 33    Schwedler next claims that he should be released because the circuit court did not hold a hearing on the State's September 26 petition within 48 hours of filing. See 725 ILCS 5/110-6.1(c)(2) (West 2022). Schwedler cannot pursue this argument, however, because the record shows his counsel agreed to the continuance on September 26 to October 18 for hearing on the petition for pretrial detention. See *People v. Reimolds*, 92 Ill. 2d 101, 106 (1982).

¶ 34    Schwedler's next claim is that the circuit court failed to conduct a proper pretrial detention hearing. Per the Code, after the State files a petition for pretrial detention, the court must hold a hearing on the petition. The Code further explains, in relevant part, that, "The State or defendant may present evidence at the hearing by way of proffer based upon reliable information," and, "The defendant shall have the opportunity to testify, to present witnesses on his *** behalf, and to cross-examine any witnesses that are called by the State." 725 ILCS 5/110-6.1(f)(2), (3) (West 2022). Whether the court conducted an appropriate pretrial detention hearing is another issue of statutory interpretation subject to *de novo* review. *Taylor*, 2023 IL 128316, ¶ 45.

¶ 35    The record shows that at the October 18, 2024, proceeding, the circuit court first heard argument specifically on Schwedler's motion to strike, then moved directly to finding that the State had satisfied the three requirements of section 110-6.1(e)(1)-(3) of the Code. See 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022). Defense counsel requested that the court make an official ruling

on the motion to strike, to which the court only replied it was denied. Counsel then complained that the court had granted the State's petition without requiring a proffer, let alone permitting Schwedler to present evidence. The court indicated the State had already made a "10-page" proffer, and it based its findings thereon.

¶ 36    On this record, we find that the circuit court did not conduct an appropriate pretrial detention hearing. In referencing the "10-page" proffer in response to defense counsel, the court was apparently referring to a 2-page written summary of the facts of the case attached to the State's petition. Even presuming the Code permits the State to offer only a written proffer, the Code is clear that the court must provide the defendant the opportunity to challenge the State's proffer. Here, the court denied Schwedler the opportunity to present any challenge. Accordingly, we reverse the detention order and remand for the court to conduct a pretrial detention hearing in accordance with the Code's requirements.

¶ 37    The State contends that the circuit court's proceeding was sufficient because any error was "harmless" based on Schwedler's counsel's arguments at the motion for relief. This argument fails because the plain language of the Code unequivocally requires the court to conduct a hearing on the State's petition before a defendant can be detained, and the court simply failed to do so. *Id.* § 110-6.1(f). Whether an error at a pretrial detention hearing can be "harmless" in this context is an issue for another case, as the court did not comply with the basic requirements of conducting the hearing.

¶ 38    Because remand is required to hold a proper hearing, we do not reach Schwedler's claims regarding the circuit court's substantive findings at, or pretrial detention order from, the October 18, 2024, proceeding.

¶ 39                                    CONCLUSION

14

¶ 40    The circuit court failed to hold an appropriate pretrial detention hearing on the State's timely petition, and accordingly, we reverse the detention order and remand for a new hearing.

¶ 41    Reversed and remanded.

*People v. Schwedler*, 2025 IL App (1st) 242157

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 24-CR-8646; the Hon. Kenneth J. Wadas, Judge, presiding. |
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Doyle Moeller, Assistant Public Defender, of counsel), for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (Joseph Alexander, Assistant State's Attorney, of counsel), for the People. |