2025 IL App (1st) 250488-U
No. 1-25-0488B
Order filed June 20, 2025

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 CR 11513 01 |
| | ) | |
| WILLIAM SUBER | ) | The Honorable |
| | ) | Angela Munari Petrone |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Justices C.A. Walker and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. The State timely petitioned and carried its burden to prove defendant should be detained before trial.

¶ 2    Within limits, the State determines when to initiate and conclude a prosecution. William Suber neglects this discretion while challenging the order that detains him before trial under the Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act, also known as the Pretrial Fairness Act. We find that the State filed its petition to detain him timely and met its burden to justify his detention. We affirm.

¶ 3                                    Background

¶ 4      The State charged William Suber with unlawfully possessing a weapon but did not petition to detain him. About eight weeks later, the trial court allowed the State to dismiss the case. Seven weeks after the dismissal, a grand jury returned an indictment against Suber for similar offenses. The State successfully petitioned to detain Suber at his first appearance. The trial court later denied his motion to reconsider.

¶ 5                           *Case no. 24 MC1 110681 01*

¶ 6      The State filed multiple charges against Suber after he was arrested for allegedly (i) possessing a loaded gun despite having prior felony convictions and (ii) threatening someone with that weapon. Although the charging instrument does not appear in the record before us, we do have the transcript of the probable cause hearing in which the trial court found probable cause for Suber's arrest. Because the State had not petitioned to detain him, the court ordered that he submit to pretrial supervision.

¶ 7                            *Case no. 24 CR 11513 01*

¶ 8      A grand jury indicted Suber on several charges, including one count of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2024)). While the indictment does not appear in the record before us, it shows the parties had copies of the indictment, which the State referenced in its petition. The parties litigated the timeliness of the State's petition and the sufficiency of its proffer.

¶ 9                             *Detention Hearing*

¶ 10     Suber contended the State's petition was untimely because the State had failed to petition for his detention in the earlier case with the same information. The State countered that its petition

was timely because (i) the earlier case "was dismissed," (ii) this case constitutes a "new matter," and (iii) its petition was filed at Suber's first appearance as the Code permits. The trial court agreed with the State, finding that the new case "start[ed] the time all over again."

¶ 11 The State presented a proffer showing that police officers arrived at a residential area looking for a man with a gun wearing black pants and a white tank top. Officers detained Suber, who did not have a gun but was found with a live 9mm round. A loaded 9mm gun was discovered nearby. Officers spoke with a witness who accused Suber of pointing a gun at him during an argument over money. In addition, the State proffered that at the time of his arrest, Suber was "on parole and had active warrants." He had five prior felony convictions, including one for unlawful use of a weapon by a felon.

¶ 12 In his defense, Suber proffered that he was 28 years old, lived with his father, and held two jobs. He noted that none of his prior convictions were for violent offenses. He reminded the court that, in the earlier case, Pretrial Services had recommended his release. He noted that the police report did not indicate the witness had identified the recovered firearm as the one Suber had pointed at him.

¶ 13 The trial court reviewed the police report and noted the alleged victim knew Suber and that Suber had arrived at his home with a gun to collect money.

¶ 14 Ultimately, the trial court granted the State's petition to detain Suber. The State had demonstrated that: (i) Suber had committed a detainable offense—unlawful possession of a weapon by a felon, (ii) he presented a real and present threat to the alleged victim, and (iii) no condition short of detention would suffice given Suber had shown a willingness to violate

conditions of release on mandatory supervised release, which prohibited him from possessing firearms or ammunition.

¶ 15                                *Motion to Reconsider*

¶ 16    Suber moved to reconsider, again questioning the timeliness of the State's petition and the sufficiency of its proffer.

¶ 17    In Suber's view, the similarity of the charges in the two prosecutions, as well as the absence of new facts, suggested that cases no. 24 MC1 110681 01 and no. 24 CR 11513 01 were effectively one case, so the State petitioned too late. Suber did not accuse the State of any impropriety but contended that allowing dismissals to reset the Code's timeline could lead to gamesmanship and unnecessary delay in other cases.

¶ 18    The trial court inquired about the dismissal and delay in this case. The State explained that the dismissal arose after a testifying officer missed a hearing. The State noted that about two months elapsed between the dismissal of the felony complaint and the grand jury's return of an indictment. During that time, Suber was not in custody. The court rejected Suber's argument regarding the petition's timeliness, concluding that the indictment "constitute[d] a new case" and thus "started the process all over again."

¶ 19    The trial court also asked the parties for any new information relevant to the detention decision. The State said that Suber had two prior bond forfeitures and that it had footage from a body-worn camera. Suber allegedly fled a short distance before being arrested. The arrest report indicated that Suber had gone to the home of the alleged victim to collect money and pointed a gun during that altercation. Officers arrested Suber in the courtyard of that home and found the

gun next to a flowerpot. The court concluded that the State had met its burden to detain Suber before trial.

¶ 20    Suber filed a notice of appeal but chose not to file a memo in support, opting instead to refer to his contentions as raised in his motion to reconsider.

¶ 21                                    Analysis

¶ 22    Suber challenges the timeliness of the State's petition and the sufficiency of its proffer. The timeliness issue presents questions of law that we review *de novo*. See *People v. Clark*, 2024 IL 130364, ¶ 15. Likewise, we review *de novo* the sufficiency of the State's proffer. *People v. Morgan*, 2025 IL 130626, ¶ 51.

¶ 23                        *Timeliness of Petition to Detain*

¶ 24    Section 110-6.1(c)(1) of the Code controls when the State may petition to detain. See 725 ILCS 5/110-6.1(c)(1) (West 2024). The State may petition "without prior notice to the defendant at the first appearance before a judge[.]" *Id.* Here, the State petitioned to detain Suber at his first appearance before the judge in this case, no. 24 CR 11513 01. Therefore, the State's petition was timely under the Code. *Id.*

¶ 25    But Suber disagrees, contending this hearing "was not [his] first date before a judge. Rather, * * * [he] had been brought to court on this charge" in the earlier case, no. 24 MC1 110681 01. He argues that he faced the same allegations in both cases, and the two cases are essentially a single case, meaning the State's petition was untimely.

¶ 26    Suber's argument fails because he overlooks the legal implications of the State's motion to dismiss the earlier case. When the State "nolle prosses" a case, it formally enters into the record that it is no longer willing to prosecute it. *People v. Hughes*, 2012 IL 112817, ¶ 22. Once a case is

nol-prossed, the proceedings are terminated, and the defendant is free to go. *Hughes*, 2012 IL 112817, ¶ 23. The defendant has not been acquitted but instead finds himself returned to the status he had before facing prosecution. *Id.* If, as here, the State nol-prosses early on (before jeopardy attaches), the State may re-prosecute, absent proof of bad faith. See *id.* (setting out other limitations not relevant).

¶ 27 The record contains no indication that the State acted in bad faith when nol-prossing the earlier case against Suber. Indeed, Suber conceded this when objecting to the timeliness of the State's petition before the trial court. Moreover, the complexity of proceeding before a grand jury suggests the State was careful in deciding to bring a "new and separate proceeding." (Internal quotation omitted.) See *Hughes*, 2012 IL 112817, ¶ 24 (describing procedural steps State may take after nol-prossing case).

¶ 28 Suber's citation to *People v. Schwedler*, 2025 IL App (1st) 242157, does not support his claim. There, we analyzed whether a superseding indictment "reset the clock" under section 110-6.1(c)(1). *Schwedler*, 2025 IL App (1st) 242157, ¶ 24. But, because the State prosecuted only one case, we did not analyze the effect of nol-prossing the initial case and then bringing a new case. *Schwedler*, 2025 IL App (1st) 242157, ¶¶ 3-16. These distinct postures lead us to conclude that *Schwedler* has no relevance to the situation here. See *Hughes*, 2012 IL 112817, ¶ 22-23.

¶ 29 Given the nature of a *nolle prosequi*, this is a straightforward matter under the Code. The State timely petitioned to detain Suber at his first appearance before a judge.

¶ 30                                   *Detention Required*

¶ 31 Illinois law now presumes defendants are eligible for pretrial release. 725 ILCS 5/110-2(a) (West 2022); *id.* § 110-6.1(e). The trial court may order a defendant detained before trial only for

certain offenses by finding clear and convincing evidence that (i) the proof is evident or the presumption great that the defendant committed the detention-eligible offense, (ii) the defendant poses a real and present threat to the safety of individuals or the community based on the specific articulable facts of the case, and (iii) no condition or combination of conditions can mitigate that real and present threat. *Id.* § 110-6.1(e). Suber argues no element supports his release.

¶ 32    On the first element, Suber concedes he has been charged with a detention-eligible offense but contests the proffer as lacking critical facts. He points out that (i) the firearm was not recovered from him, (ii) officers did not see him with the firearm, (iii) no "scientific evidence" linked him to the firearm, and (iv) the firearm was found in a "common area." Suber overlooks the portion of the proffer indicating that a person who knew him had described to police Suber's gunpoint shakedown for money. *People v. Carpenter*, 2024 IL App (1st) 220970, ¶ 32 (discussing actual and constructive possession). Clear and convincing evidence in the proffer leads us to conclude that proof was evident and presumption strong that Suber possessed a firearm. See *Morgan*, 2025 IL 130626, ¶ 51 (defining standard of review).

¶ 33    Concerning the second element, Suber denies he poses a threat to the alleged victim because (i) his prior convictions were not for violent offenses, (ii) he injured no one here, and (iii) he cooperated with officers once apprehended. Again, Suber overlooks relevant parts of the proffer. See 725 ILCS 5/110-6.1(g)(1)-(9) (West 2024) (listing factors court should consider when making dangerousness determination). As alleged, he fled from the police after going to the victim's home with a loaded gun to demand money, a gun that he could not lawfully possess while on mandatory supervised release for a recent felony conviction. Clear and convincing evidence in

the proffer leads us to conclude that Suber poses a real threat to the victim that our criminal code does not adequately deter. See *Morgan*, 2025 IL 130626, ¶ 51 (defining standard of review).

¶ 34     As to the third element, Suber denies pretrial detention is necessary because he has (i) no previous charges for escape, (ii) a place to stay if released on electronic monitoring, and (iii) "picked up no new cases" between this one and the one the State nol-prossed. Once again, Suber overlooks the "nature and circumstance of the offense" described in the proffer and downplays his criminal history. See *People v. Mikolaitis*, 2024 IL 130693, ¶ 20 (discussing factors relevant to proving third element). Suber had five prior felonies and two bond forfeitures when, as alleged, he took a loaded gun to the home of the victim and demanded money while serving out a term of mandatory supervised release. Clear and convincing evidence in the proffer leads us to conclude that pretrial detention is necessary. See *Morgan*, 2025 IL 130626, ¶¶ 30, 51 (applying *de novo* review because "factfinding with respect to a party's burden of proof, even when conducted in conjunction with the balancing of statutory factors, is not a discretionary act").

¶ 35     Affirmed.