2025 IL App (1st) 251815-U
Order filed: December 3, 2025

FIRST DISTRICT
THIRD DIVISION

No. 1-25-1815B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 25 CR 7727 |
| | ) | |
| MICHAEL RICHARDSON, | ) | Honorable |
| | ) | Thomas J. Byrne, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lampkin and Reyes <u>concur</u> in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm the denial of defendant's motion for relief, where the petition for detention hearing was timely filed, was not a subsequent petition, and the State met its burden of proof as to his detention.

¶ 2   Defendant-appellant, Michael Richardson, appeals from the denial of his motion for relief which challenged the order granting the State's petition that he be detained pretrial pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022), as amended by Public Act 101-652 (eff. Jan. 1, 2023)), commonly known as the Pretrial Fairness Act (Act).[1] Defendant argues that the petition was untimely under section 110-6.1(c)(1)

_____

[1] While commonly known by these names, neither the Illinois Compiled Statutes nor the foregoing public act refer to the Act as the "Safety, Accountability, Fairness and Equity-Today" Act, *i.e.*, SAFE-T

of the Code (725 ILCS 5/110-6.1(c)(1) (West 2022)), the petition should be considered a "subsequent" petition which did not meet the requirements of section 110-6.1(d)(2) of the Code (725 ILCS 5/110-6.1(d)(2) (West 2022)), and the State did not meet its burden of proof to support his detention. We affirm.

¶ 3    On May 9, 2025, defendant was charged in a felony complaint (municipal case number 25110786501) (municipal case) which alleged that on May 8, 2025, defendant possessed a nickel-toned Rossi Magnum .357 revolver with a 6-inch barrel and live rounds while being a convicted felon. The circuit court granted the State's petition for a pretrial detention hearing and ordered that defendant be detained pretrial. The State, on the June 9, 2025, preliminary hearing date, informed the court that the police officer was not in court and nol-prossed the municipal case. Defendant was released from detention.

¶ 4    On July 9, 2025, following presentation to a grand jury, defendant was charged in a three-count indictment (25 CR 0772701) with two counts of aggravated unlawful possession of a weapon and one count of unlawful possession of a weapon by a felon, based on the same circumstances of May 8, 2025. On July 17, 2025, defendant failed to appear at the scheduled arraignment. The court continued the arraignment hearing to July 31, 2025, and the clerk notified defendant of the date.

¶ 5    On July 31, defendant appeared. The court appointed the office of the Cook County Public Defender to represent him and defendant was arraigned.

¶ 6    That same day, the State filed a petition for a pretrial detention hearing (petition) requesting that defendant be detained pretrial. The petition asserted that defendant posed a real and present

Act, or the "Pretrial Fairness Act." See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1. Certain provisions of the legislation in question were amended by Pub. Act 102-1104 (eff. Jan. 1, 2023). See *Rowe*, 2023 IL 129248, ¶ 4. The supreme court initially stayed the implementation of this legislation but vacated that stay effective September 18, 2023. *Id.* ¶ 52.

threat to the safety of any person or persons or the community. To support this claim, as it similarly did in the municipal case petition, the State alleged:

> "Defendant has multiple felony convictions. Defendant was wearing all black and a black mask with another co-offender wearing all black, a blue hoodie and a black face mask. Both men appeared armed. Defendant was gripping a black handle of a handgun in his waistband. Both men fled. Defendant and co-offender ran through the Victim's residence (a 65+year old woman) to avoid arrest. Defendant discarded the loaded .357 magnum revolver that officers saw him with near the front door of the Victim's residence."

¶ 7    The assistant public defender (APD) moved to strike the petition as untimely under section 110-6.1(c)(1) of the Code (725 ILCS 5/110-6.1(c)(1) (West 2022)), because it was not brought at defendant's first appearance or within 21 days after defendant's arrest and release in the municipal case. The court denied the motion to strike and proceeded to a detention hearing.

¶ 8    The State proffered that on May 8, 2025, while on routine patrol police officers observed defendant and a co-offender on North Lawndale in Chicago. Defendant was wearing a black hoodie and pants and a face mask; the co-offender was wearing black pants and a face mask. Defendant saw the officers and made eye contact. He gripped the front of his waistband and adjusted a heavy object. The officers approached defendant and saw him gripping the black handle of a firearm with a silver finish in the front of his waistband. Defendant and co-offender entered and then locked the gate of the property at 726 North Lawndale. The co-offender took a black firearm from his front waistband and left it by the front door of the home. Police later recovered a 9mm firearm from next to the front door. Defendant and co-offender entered the first-floor residence and defendant closed and locked the door. The police heard voices from inside the residence screaming and asking the intruders to leave the home. The police entered the home and

were told the offenders had run through the house. Defendant was discovered on the porch stairs, between the first and second floor, and he was detained. The officers recovered a nickel-toned magnum revolver with a six-inch barrel and live rounds. Defendant does not have a valid firearm owners identification (FOID) card or concealed carry license (CCL). Police later learned that defendant is a convicted felon.

¶ 9    The proffer did not include any discussion of the age of any resident in the home located on North Lawndale. The proffer in the municipal case showed that a woman in the home was 65 years old or older.

¶ 10    The State informed the court that defendant had four felony convictions. He was convicted in 2019 on a Class 4 felony, possession of a controlled substance and sentenced to one year of prison; in 2018, on reckless conduct and sentenced to one year in prison; in 2016, on possession of a controlled substance and sentenced to three years in prison; and in 2016, on possession of a controlled substance where he received probation that was terminated unsatisfactorily.

¶ 11    Defendant argued that the State had not shown that defendant had possessed either of the recovered firearms. Additionally, defendant does not pose a threat in that he has not been charged with using a firearm or making any threats of force or injury in the criminal case, has not been convicted of any firearm offenses, and his last conviction was in 2019. He appeared voluntarily at the arraignment which demonstrates he would comply with any conditions of release. Defendant has a five-year-old son and is responsible for taking him to school. His release would allow him to continue to carry out his parental responsibilities, and attend medical appointments relating to a recent car collision and proceedings relating to a pending civil case.

¶ 12    At the conclusion of the hearing, the court made oral findings, including that the State had shown by clear and convincing evidence that the proof is evident or the presumption great that

defendant committed an eligible offense, a Class 2 non-probationable offense of unlawful possession of a weapon by a felon. As to defendant's threat to safety and whether there are conditions which would mitigate the threat, the court stated:

"The officers saw this defendant armed with what they recognize to be a silver-finish handgun. The defendant immediately fled from the police. He was with another armed individual. He was masked at the time and ran from the police and he ran into an elderly citizen's home, a person he didn't know to avoid detention. It shows the defendant certainly presents a danger to the community at large if he's willing to avoid arrest by running into an unknown person's home thereby putting those individuals in danger.

There is no combination of conditions available to the Court that can mitigate the danger and safety of the community that this defendant poses when he chooses to arm himself, although he has no right pursuant to law to arm himself with a gun. He chooses to disregard the sanctity of individuals' homes for his own needs to avoid arrest and responsibility. The petition for detention is granted."

¶ 13    The court entered a written order finding that the State proved by clear and convincing evidence that the proof is evident or the presumption great that defendant committed an eligible offense, unlawful possession of a weapon by a felon, poses a real and present threat to any person or persons or the community based on the specific articulable facts of the case, and no condition or combination of conditions can mitigate defendant's threat. As to the threat posed by defendant, the court noted in the order that police observed defendant, a convicted felon, in possession of a gun and masked. He ran from police into the home of an older individual to avoid apprehension. As to mitigating the threat, the court further found that detention was the "only means" to protect

the community because defendant did not abide by court orders or the law which prohibited him from possessing a gun.

¶ 14    On August 29, 2025, defendant filed a motion for relief. Defendant argued that the court erred in not striking the petition for being untimely as it was not filed on the first appearance or within 21 days of defendant's release; the petition should be considered as a subsequent petition, which did not comply with the Code and for this additional reason it should have been struck; and the State did not meet its burden to provide clear and convincing evidence that his detention was warranted. In the motion for relief, defendant acknowledged that he "has difficulty attributing the [State's] conduct to bad faith" when it nol-prossed the municipal case and brought the criminal case after a grand jury indictment.

¶ 15    On September 5, 2025, the court heard and denied the motion for relief. Of note, during the hearing, defendant stated that he was not alleging bad faith on the part of the State in its prosecution of defendant.

¶ 16    Defendant appealed under Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024). In this court, defendant filed a "Notice in Lieu of Rule 604(h) Memorandum" indicating that defendant would not file a Rule 604(h) memorandum setting forth his claims on appeal. The issues on appeal are those raised in the motion for relief. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024).

¶ 17    Pretrial release is governed by article 110 of the Code (725 ILCS 5/110 (West 2022)), as amended by the Act. Under the Code, the requirement of posting monetary bail was abolished in Illinois as of September 18, 2023, in favor of pretrial release on personal recognizance or with conditions of release. See 725 ILCS 5/110-1.5 (West 2022); *Rowe*, 2023 IL 129248, ¶ 52. Under the Code, the State may file a verified petition requesting the denial of pretrial release and the circuit court may deny a defendant pretrial release if the State satisfies its burden at an evidentiary

hearing. *People v. Cooper*, 2025 IL 130946, ¶ 18 (citing 725 ILCS 5/110-2(a) (West 2022); *People v. Clark*, 2024 IL 130364, ¶ 1).

¶ 18    Defendant first argues that the circuit court was not authorized to detain him because the petition was untimely under section 110-6.1(c) of the Code (725 ILCS 5/110-6.1(c) (West 2022)). We review this question *de novo* as it requires us to interpret a statute. *People v. Milner*, 2024 IL App (1st) 241284, ¶ 27 (citing *People v. Ramyyeh*, 2024 IL App (1st) 240299, ¶ 10.

¶ 19    Section 110-6.1(c) provides that "[a] petition may be filed without prior notice to the defendant at the first appearance before a judge, or within 21 calendar days *** after arrest and release of the defendant upon a reasonable notice to defendant." 725 ILCS 5/110-6.1(c) (West 2022). Defendant asserts that his first appearance took place on May 9, 2025, and he was released from detention in the municipal case on June 9, 2025. The petition was filed in the criminal case on July 31, 2025, well past the first appearance date and more than 21 calendar days from the day he was released from detention in the municipal case. This argument depends on defendant's position that the criminal case is a continuation of the municipal case because both cases arise from the same incident.

¶ 20    As the State asserts and as defendant acknowledges, however, this court rejected a similar argument in *People v. Suber*, 2025 IL App (1st) 250488-U. The defendant in that case originally was charged in a municipal case where the State did not seek his detention. *Id.* ¶¶ 4-5. The municipal case was nol-prossed. *Id*. The State later returned an indictment from a grand jury against the defendant. On the defendant's first appearance in the later case, the State petitioned for the defendant's detention pretrial. *Id.* ¶ 8. The defendant argued that this petition was untimely because the municipal case and the criminal case were effectively one case. *Id.* ¶ 25. The *Suber* court found the petition was timely, stating:

"[The defendant's] argument fails because he overlooks the legal implications of the State's motion to dismiss the earlier case. When the State 'nolle prosses' a case, it formally enters into the record that it is no longer willing to prosecute it. [Citation.] Once a case is nol-prossed, the proceedings are terminated, and the defendant is free to go. [Citation.] The defendant has not been acquitted but instead finds himself returned to the status he had before facing prosecution. [Citation.] If, as here, the State nol-prosses early on (before jeopardy attaches), the State may re-prosecute, absent proof of bad faith. [Citation.]" *Id.* ¶ 26 (citing *People v. Hughes*, 2012 IL 112817, ¶¶ 22-23).

¶ 21 The *Suber* court concluded that given the nature of the *nolle prosequi* of the first case, and that there was no contention that the State acted in bad faith, the petition was timely filed on the defendant's first appearance in the subsequent case. Although *Suber* cannot be cited as precedent, we may and do find the reasoning of the decision persuasive. Ill. S. Ct. R. 23(e) (eff. Jun. 3, 2025); *see also*, *People v. Schwedler*, 2025 IL App (1st) 242157, ¶¶ 24-29 (finding under somewhat similar circumstances, that "the State reset the 21-day clock" for filing a petition for pretrial detention by filing a superseding indictment).

¶ 22 Here, the State nol-prossed the original municipal case, after a testifying officer failed to appear at the preliminary hearing, formally entering into the record that it was no longer pursuing the municipal case. The municipal proceedings were terminated, and defendant was free to go and was returned to the status he had prior to facing the municipal charges. Because the State nol-prossed the municipal case early on, prior to jeopardy attaching, it was allowed to re-prosecute defendant, absent bad faith. The State did so and brought the criminal case by returning an indictment. The record contains no indication that the State acted in bad faith when it nol-prossed the municipal case and brought the criminal case against defendant. In his motion for relief and in

arguments during the hearing on the motion, defendant admitted that he had no evidence of bad faith on the part of the State.

¶ 23 The State, at defendant's first court appearance in the criminal case, timely petitioned to detain defendant. We therefore reject defendant's argument to the contrary and find that the circuit court had the authority to hear and grant the petition.

¶ 24 Defendant next argues that the petition should be considered as a subsequent petition and, as such, the State was required to comply with section 110-6.1(d)(2) of the Code (725 ILCS 5/110-6.1(d)(2) (West 2022)). Again, we review this issue *de novo* as a matter of statutory interpretation. *Milner*, 2024 IL App (1st) 241284, ¶ 27 (citing *Ramyyeh*, 2024 IL App (1st) 240299, ¶ 10).

¶ 25 Section 110-6.1(d)(2) of the Code provides that "[i]f the State seeks to file a second or subsequent petition under this Section, the State shall be required to present a verified application setting forth in detail any new facts not known or obtainable at the time of the filing of the previous petition." 725 ILCS 5/110-6.1(d)(2) (West 2022). Defendant contends that the petition which was filed in the criminal case was subsequent to the petition filed in the municipal court case, and should have been struck as it failed to assert additional or new facts which were not known or obtainable when the municipal case petition was filed. We disagree that the petition was a subsequent petition.

¶ 26 As *Suber* explained, the municipal case was terminated upon the *nolle prosequi* and defendant was returned to his status prior to the municipal case charges. The criminal case was a new prosecution and the petition was an initial and not a subsequent petition in the criminal case. The State was therefore not required to comply with the provisions of section 110-6.1(d)(2) and set forth additional or new facts in the petition which were not known or obtainable at the time of the municipal case petition.

¶ 27    Finally, defendant argues that the State failed to meet its burden of proof to justify his detention as it failed to establish that he posed a danger and that there were no conditions which would mitigate any danger.

¶ 28    For qualifying offenses, upon filing a verified petition requesting the denial of pretrial release, the State has the burden to prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community, and (3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-2(a), 110-6.1 (West 2022).

¶ 29    Our supreme court recently defined the applicable standard of review for initial detention hearings, which is dependent on whether live witness testimony was presented at the hearing. See *People v. Morgan*, 2025 IL 130626. Specifically, where live witness testimony is presented, "the circuit court's ultimate detention decision under section 110-6.1 [(725 ILCS 5/110-6.1 (West 2022)], in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence." *Morgan*, 2025 IL 130626, ¶ 54. However, if the hearing proceeds solely by proffer, "the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *Id*. Our review of the detention here is therefore *de novo*.

¶ 30    As to the issue of whether defendant posed a danger, section 110-6.1 of the Code provides a list of factors that a court may consider in evaluating defendant's dangerousness including, "[t]he nature of and circumstances of any offense charged, including whether the offense *** involve[d]

a weapon;" "evidence of the defendant's prior criminal history;" whether the defendant is "known to possess or have access to any weapon;" and "[w]hether, at the time of the offense ***, the defendant was on *** parole." 725 ILCS 5/110-6.1(g)(1), (2)(A), (7), (8) (West 2022).

¶ 31    "A person who acts with such disregard could reasonably be found to place the public at risk, even where, as here, that person was not arrested while actively using the firearm." *People v. Johnson*, 2024 IL App (1st) 240154, ¶ 4 (citing *People v. Lee*, 2024 IL App (1st) 232137, ¶ 29 (noting the public policy in Illinois that the public health and welfare is furthered by identifying individuals who should not have firearms (citing 430 ILCS 65/1 (West 2022))); *People v. Parker*, 2024 IL App (1st) 232164, ¶¶ 74-77 (circuit court did not err in finding a defendant with a criminal history posed a danger due to possession of a firearm where, in part, the defendant was already barred from possessing a firearm and demonstrated noncompliance with court orders)).

¶ 32    The State proffered that while on patrol on a public street, police observed defendant and another individual wearing dark clothes and masks while defendant was carrying a loaded Magnum revolver in his waistband. The co-offender also carried a firearm. Defendant and his accomplice posed a threat of harm to the community by being armed and masked on a city street. They entered private property and a private residence without permission in order to avoid the police. Defendant locked the door of the house after entering it. Defendant acted with disregard to the sanctity of the home and caused the residents to scream in fear.

¶ 33    The State proved by clear and convincing evidence that defendant was a danger to any person or persons or the community and to the safety and wellbeing of the innocent individuals in the home which he entered without permission while illegally armed with a loaded firearm and masked and with a co-offender who was similarly dressed, masked, and armed.

¶ 34    Under the Code, to determine which conditions of release, if any, will reasonably ensure the safety of any person or the community and the defendant's likelihood of compliance with all the conditions of pretrial release, the court must examine, in part:

"(1) the nature and circumstances of the offense charged;

(2) the weight of the evidence against the defendant ***;

(3) the history and characteristics of the defendant, including:

(A) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state;

(4) the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, that would be posed by the defendant's release ***." 725 ILCS 5/110-5(a) (West 2022); see *People v. Harris*, 2024 IL App (1st) 240310-U, ¶ 15.

¶ 35    Further, the "proof as to the danger presented by a defendant's pretrial release will frequently overlap with the evidence supporting a conclusion that less restrictive conditions cannot mitigate the threat" and "that proof may overlap again with the elements of the crime charged, but that does not render those facts any less compelling." *People v. Carpenter*, 2024 IL App (1st) 240037, ¶ 17.

¶ 36   Defendant was shown to be a danger in that he joined with an accomplice to carry firearms on a public street while wearing dark clothes and masked. In order to avoid being questioned by the police he and the co-offender fled. They entered a residence without permission and alarmed the residents. Defendant carried a firearm without having a FOID card and CCL, and despite the fact that as a convicted felon he was prohibited from doing so. His brazen conduct showed no regard for the authority of the police, the well-being of the public and the home's residents, and the legal mandates prohibiting his possession of a firearm. Additionally, defendant had a criminal history which included an unsuccessful termination of probation which provides further evidence that he was not likely to comply with conditions of release. Finally, while defendant contends that electronic monitoring would have been a sufficient condition of release, we note that electronic monitoring would still allow defendant two days of weekly movement. 730 ILCS 5/5-8A-4(A), (A-1) (West 2024) (providing for a two-day-per-week period of movement mandated for those on pretrial home confinement and electronic monitoring); *People v. Thomas*, 2024 IL App (4th) 240248, ¶ 26 ("any condition of release must be appropriately measured to meet the danger presented in each case. Knowing that electronic monitoring might detect a failure to comply with conditions of release does not diminish concerns that a particular defendant appears to present a greater risk of noncompliance, especially if the consequences of noncompliance may be grave.").

¶ 37   This clear and convincing evidence leads to our agreement with the circuit court that there were no conditions which would mitigate defendant's dangerousness. In sum, we find that the State demonstrated by clear and convincing evidence that there were no conditions that would mitigate defendant's threat to any person or persons or the community.

¶ 38   For these reasons, we affirm the denial of defendant's motion for relief and the order requiring defendant's pretrial detention.

¶ 39    Affirmed.