2025 IL App (2d) 250370
No. 2-25-0370
Opinion filed December 1, 2025

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | No. 24-CF-2627 |
| JOHNNY WILLIAMS, | ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court, with opinion.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant, Johnny Williams, appeals from orders of the circuit court of Kane County granting the State's verified petition to deny him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023) and Public Act 102-1104, § 70 (eff. Jan. 1, 2023) (we will refer to these public acts collectively as the Acts) and denying his motion to strike the State's petition.[1] On appeal, defendant argues that the State's petition was untimely and thus should be

_____

[1]Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code, has been referred

stricken. Additionally, defendant argues that even if the State's petition is not stricken, the State failed to meet its burden of proving by clear and convincing evidence that (1) he poses a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case and (2) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case. We affirm.

¶ 2                                     I. STATEMENT OF FACTS

¶ 3                                        A. Background

¶ 4     On December 18, 2024, defendant was charged by indictment with nine counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2022)), a Class X felony, and four counts of aggravated criminal sexual abuse (victim under 13 years old) (*id.* § 11-1.60(c)(1)(i)), a Class 2 felony. These charges stemmed from defendant's sexual conduct with A.M., who was under the age of 13, from January 1, 2023, through May 12, 2024.

¶ 5     On January 3, 2025, the State filed a petition for writ of *habeas corpus* to prosecute. An order issuing the writ was entered the same day. On January 16, 2025, defendant appeared before the trial court in the custody of the Illinois Department of Corrections (IDOC). At this appearance, defendant was removed from the courtroom due to an outburst.

¶ 6     On January 23, 2025, defendant again appeared before the trial court in IDOC custody. Defendant was arraigned on this date. Further, defendant elected to represent himself *pro se* and demanded trial. A jury trial was set for April 24, 2025.

---

to as the "Pretrial Fairness Act" and the "Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act." However, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

¶ 7    On February 27, 2025, defendant again appeared before the trial court in IDOC custody. Defendant requested and was appointed a public defender. Defense counsel requested that the matter be removed from the trial call, and the court struck the April 24 trial date. The case was continued until May 22, 2025, by agreement for "Completion of Discovery." On April 9, 2025, the attorney representing defendant filed a "Demand For Speedy Trial By Defendant Incarcerated In the Illinois Department Of Corrections On Unrelated Charges," which demanded a speedy trial in the matter and indicated defendant was "incarcerated in IDOC since May 14, 2024, with a projected parole date of August 1, 2025."

¶ 8    On May 22, 2025, defendant was present in the custody of IDOC. The State filed a verified petition to deny defendant pretrial release. In its petition, the State alleged that defendant was charged with detention-eligible offenses and he posed a real and present threat to the safety of any person or persons or the community. See 725 ILCS 5/110-6.1(a)(1.5), (5) (West 2022) (certain felonies and sex offenses). As additional grounds upon which defendant should be denied release, the State noted that defendant was currently in IDOC custody "for violating his mandatory supervised release after serving a 9[-]year sentence for drug induced homicide (Cl. X) and a 12[-]year sentence for delivery of a controlled substance." Defendant also had convictions of unlawful possession of a controlled substance, felony retail theft, felon in possession of a weapon, and murder.

¶ 9    On July 23, 2025, defendant moved to strike the State's petition to deny him pretrial release. In support of his motion, defendant stated that he first appeared before the court on these charges on January 16, 2025. Defendant noted that pursuant to the Code, the State may file a petition to detain "without prior notice to the defendant at the first appearance before a judge, or within the 21 calendar days *** after arrest and release of the defendant upon reasonable notice to

defendant." *Id.* § 110-6.1(c)(1). Defendant argued that the State was required to file its petition within 21 days of January 16, 2025. Because the State did not file its petition to detain until May 22, 2025, more than 21 days after January 16, 2025, defendant contended that its petition should be stricken.

¶ 10    The State filed its response on July 23, 2025. The State asserted that defendant was in IDOC custody due to a parole violation at the time he was charged with the instant offenses and "he remains in custody there as of this filing." Because defendant was in custody at the time these charges were filed, he had never been arrested or released on these charges. Further, the State analogized the timing requirement to file a petition to detain to the 48-hour requirement for the trial court to hold a detention hearing and noted that in *People v. Cooper*, 2025 IL 130946, ¶¶ 40-41, the supreme court held that the 48-hour hearing requirement was directory and thus automatic dismissal was not the appropriate consequence for failure to abide by the rule. Accordingly, the State argued that if the petition was not timely filed, the timing issue should also be considered directory, and the petition should not be dismissed.

¶ 11                              B. Detention Hearing

¶ 12    A hearing on the motion to strike and the petition to detain was held on July 25, 2025. Defendant was present in the custody of IDOC. The matter first proceeded to a hearing on the motion to strike. In support of his motion, defendant argued that because he was in IDOC custody and the State was aware of his location, the State was required to file a petition to detain within 21 days of defendant's first appearance in the trial court, January 16, 2021. Defendant asserted that "the spirit of this law is not to allow the State infinite time to file these [p]etitions." Rather, the 21-day time frame should be based upon when a defendant is "made aware of the charges and told to

come to court." Defendant further noted that while there had not yet been a formal arrest in the matter, he had appeared in the trial court on these charges since January.

¶ 13    In response, the State asserted that there was no timing violation in filing its petition. In support, the State cited *People v. McClure*, 2024 IL App (5th) 240027, ¶ 23, for the proposition that the Code contemplates two scenarios where the State will file a petition to detain. First, if a defendant is arrested and held in jail pending his or her first appearance, the State must file its petition to detain the defendant at the time of the first appearance or before. *Id.* Second, if the defendant is arrested and released, the State has 21 days to file a petition to detain. *Id.* Based on its reading of *McClure*, the State asserted that the Code does not contemplate a situation like defendant's, where he appeared in court while in IDOC custody; therefore, the State's petition was not untimely. Further, the State disagreed with defendant's assertion that this reading of the Code created an "infinite time" for it to file a petition. Rather, it considered the Code's purpose was to "grant to every [d]efendant a [h]earing," and "for the Court to make this determination," in order to balance the rights of a defendant with the safety concerns of the community. The State asserted that the motion to strike should be denied because defendant was never arrested on these charges and was never released, so there was no issue of timeliness. In the alternative, the State argued that under *Cooper*, 2025 IL 130946, the timeliness requirement was directory and thus automatic dismissal is not appropriate.

¶ 14    The trial court denied defendant's motion to strike. In issuing its oral ruling, the trial court noted that it had not been cited any "specific law about this particular situation" and that it would follow *Cooper*, finding the timing requirement in the Code to be directory, not mandatory. Accordingly, the trial court denied defendant's motion to strike and proceeded to a hearing on the State's detention petition.

¶ 15    In support of its petition to detain, the State proffered a transcript of the grand jury proceedings in this matter. The transcript stated as follows. Beth Mullarkey testified that she is an investigator for the Child Advocacy Center (CAC) in Kane County. As part of her employment, she was assigned to investigate a matter involving defendant. Mullarkey spoke to A.M. A.M. was 10 years old at the time the investigation began. A.M. told Mullarkey that defendant dated A.M.'s great-grandmother. When defendant was released on parole for an unrelated case, he moved in with A.M.'s family. A.M. disclosed to Mullarkey that defendant touched her vagina, which she called her "crystal," and her breasts, which she called her "gems." She stated that defendant touched her with his fingers, mouth, and penis. A.M. described that defendant would have her on top of him and "move her back and forth." She also stated that she touched his penis with both her hands and her mouth. This occurred more than once. A.M. further told Mullarkey that defendant threatened A.M. that "she would be taken away if she told" anyone about the abuse. Mullarkey stated that A.M.'s mother was also interviewed as part of the investigation. A.M.'s mother recalled that after defendant moved in with the family, A.M. began "act[ing] up" and began urinating on the floor. Eventually, A.M. needed to live separately with her grandmother, and that is when she came forward about the abuse. Mullarkey additionally testified regarding an incident that occurred at the family's home on Mother's Day in 2024. On that day, there was a fight within the family, and police were called to the residence. During the fight, a relative of A.M. called defendant "a pedophile." This led other family members to question why defendant would be referred to as a pedophile and a discussion in which A.M. came forward with her allegations.

¶ 16    Additionally, the State proffered defendant's criminal history, noting that defendant was presently in IDOC custody for a parole violation after serving a 9-year sentence for drug-induced homicide and a 12-year sentence for delivery of a controlled substance. Defendant also had

convictions of unlawful possession of a controlled substance, felony retail theft, felony possession of a weapon, and murder. The State then proceeded to argument.

¶ 17     The State argued that defendant posed a real and present threat to the safety of any person or persons of the community, specifically A.M. It asserted that defendant had a lengthy criminal history and, in the instant matter, threatened A.M. that she would be taken away if she told anyone about the abuse. Thus, the State contended that defendant posed a threat to A.M. and the community based on his criminal history and his current threats.

¶ 18     Finally, the State argued that there was no condition or combination of conditions that could mitigate the real and present threat to A.M. or the community. The State contended that electronic home monitoring (EHM) would not solve the issue of whether defendant has access to minor children. The State noted that prior to being released on parole, defendant had no connection to A.M. and thus there were no less restrictive conditions than detention to ensure that defendant would not have access to new potential victims.

¶ 19     In response, defense counsel argued that the State failed to meet its burden by clear and convincing evidence that defendant committed the crimes with which he was charged. Defense counsel argued that the grand jury proceedings were based upon probable cause, not clear and convincing evidence, and were therefore not sufficient to meet the State's burden. Defense counsel also argued that the State failed to meet its burden by clear and convincing evidence that defendant posed a real and present threat to any person or persons based on specific articulable facts. Defense counsel noted that while defendant had a lengthy criminal history, the State did not provide time periods for his convictions and some of his convictions were nonviolent offenses. Defense counsel noted that defendant, if released, had a friend's home to stay at and a job ready for him. Finally, defense counsel asserted that there were conditions that could mitigate any threat posed by

defendant's release. Defense counsel noted that defendant did not have a "pattern of behavior consistent with the allegations in this case or prior sex offenses." Further, defense counsel contended that the State did not sufficiently prove that if defendant was placed on EHM, he would leave his home or have access to A.M. or any other individuals.

¶ 20     The trial court denied defendant pretrial release. In its oral findings, the court concluded that the State proved by clear and convincing evidence that the proof was evident or the presumption great that defendant committed the offenses charged. The court also found that defendant posed a real and present threat as defendant's criminal history showed that he was capable of violence. Finally, the trial court found that no condition or combination of conditions could mitigate the threat posed by defendant. The trial court emphasized that A.M. was a stranger to defendant prior to his release and defendant "demonstrated the ability to find the situations which would allow him to endanger other victims if he's not incarcerated."

¶ 21                    C. Motion for Relief and Notice of Appeal

¶ 22     On August 18, 2025, defendant filed a "Motion for Relief Under the Pretrial Fairness Act." See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). In the motion, defendant disputed the court's ruling that the Code's filing requirements for a detention petition are directory. Further, defendant argued that the trial court erred in granting the State's petition to detain, contending that the State failed to prove by clear and convincing evidence that he committed the charged offenses, that he posed a real and present threat to the safety of any person, persons, or the community, and that no condition or combination of conditions could mitigate the risk of threat he posed if granted pretrial release.

¶ 23     A hearing on defendant's motion for relief was held on August 21, 2025. In support of the motion, defense counsel argued that defendant had never been formally arrested in this case, but

the date of his first appearance should have started a 21-day period for the State to file its detention petition. Because the State did not file the petition within 21 days after defendant's first appearance, the petition should have been stricken. Defense counsel further argued that the State had not proven that measures such as EHM or GPS monitoring would not eliminate the risk of harm posed by defendant if he were released pending trial.

¶ 24 In response, the State asserted that under *Cooper*, the filing requirement for the State's petition was directory, and thus it was proper for the trial court to deny defendant's motion to strike. Additionally, the State argued that it had proven by clear and convincing evidence that defendant posed a real and present threat to the community and no condition or combination of conditions could mitigate the threat posed.

¶ 25 The trial court denied the motion for relief, citing the reasons stated when he denied defendant's motion to strike and granted the State's petition to detain. On August 25, 2025, defendant filed a notice of appeal. The court appointed the Office of the State Appellate Defender (OSAD) to represent defendant. See Ill. S. Ct. R. 604(h)(3) (eff. Apr. 15, 2024) (providing that a party may initiate an appeal by filing a notice of appeal in the circuit court at any time prior to conviction). OSAD elected to file a memorandum under Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024). The State filed a response in opposition to the appeal.

¶ 26                                    II. ANALYSIS

¶ 27 Article 110 of the Code, as amended by the Acts, abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022). In Illinois, all persons charged with an offense are eligible for pretrial release irrespective of the seriousness or the nature of the offense. *Id.* §§ 110-2(a), 110-6.1(e); *People v. Grayson*, 2024 IL App (4th) 241100-U, ¶ 7. To detain a defendant, the State has the

burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (725 ILCS 5/110-6.1(e)(1) (West 2022)), that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case (*id.* § 110-6.1(a)(1)-(7), (e)(2)) or a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8), (e)(3)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or the risk of the defendant's willful flight (*id.* § 110-6.1(e)(3)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question ***." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. The Code further requires that "[d]ecisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2022).

¶ 28                 A. Whether the State's Petition to Detain Was Untimely

¶ 29     We turn first to the issue of whether there was a violation of the Code's timing provisions. Defendant argues in his memorandum that the State's petition was untimely because section 110-6.1(c)(1) of the Code requires a petition to detain be brought within 21 days of a defendant's first appearance, and thus the trial court erred in denying his motion to strike. Defendant contends that, under the plain language of the Code, the writ for his appearance constituted an arrest. Accordingly, the State was required to file a petition to detain him at his first appearance on January 16, 2025, or within 21 days thereafter, because his first appearance in this case constituted a "release" and thus began the 21-day period in which the State could file a petition. In short, he asserts the May 22, 2025, filing was too late. In response, the State contends there was no violation of the Code's timing provision because section 110-6.1(c)(1) "does not contemplate the situation

here where defendant was indicted on these current charges while in the custody of IDOC on a parole violation in a separate case." See *id.* § 110-6.1(c)(1). The State further argues that because defendant was never arrested on these charges, the 21-day clock never started and the petition was therefore timely.

¶ 30    This is a question of statutory construction that is reviewed *de novo*. *People v. Taylor*, 2023 IL 128316, ¶ 45. When interpreting a statute, the "primary goal is to ascertain and give effect to the intent of the legislature." *People v. Grant*, 2022 IL 126824, ¶ 24. The best indication of that intent "is the language of the statute itself, which must be given its plain and ordinary meaning." *Id.* "The statute should be evaluated as a whole, with each provision construed in connection with every other section. When the statutory language is clear, we must apply the statute as written without resort to other tools of construction." *Jackson v. Board of Election Commissioners of Chicago*, 2012 IL 111928, ¶ 48.

¶ 31    Section 110-6.1(c)(1) of the Code provides, in pertinent part, that

"A petition may be filed without prior notice to the defendant at the first appearance before a judge, or within 21 calendar days, except as provided in Section 110-6, after arrest and release of the defendant upon reasonable notice to defendant; provided that while such petition is pending before the court, the defendant if previously released shall not be detained." 725 ILCS 5/110-6.1(c)(1) (West 2022).

¶ 32    Three cases are helpful here as we decide whether this provision was contravened. First, in *People v. Clark*, 2024 IL 130364, our supreme court narrowly interpreted section 110-6.1(c)(1) of the Act, concerning the time to file a petition to detain, to mean that the "first appearance is limited to the first time a defendant is brought before a judge" (*id.* ¶ 23), "because this is the only interpretation that is consistent with the other relevant provisions governing pretrial release." *Id.*

¶ 24. Therefore, the term "first appearance" refers to a *defendant's* "first appearance" in the matter (*id.* ¶ 26), and not any hearing where a party is present, such as the court's *ex parte* issuance of a warrant, as the defendant urged (*id.* ¶ 8).

¶ 33    Second, in *People v. Bradford*, 2023 IL App (1st) 231785, ¶ 3, the defendant was charged, brought before a judge, and ordered released with EHM. He was not actually released, however, because his living situation made EHM impossible. *Id.* ¶ 4. When he was brought back before the court, the State filed its petition to detain. *Id.* The defendant argued that section 110-6.1(c)(1) of the Code required the petition to detain to be filed " 'at the first appearance before a judge, *or within the 21 calendar days*[ ] *** *after arrest and release of the defendant*.' " (Emphasis in original.) *Id.* ¶ 19 (quoting 725 ILCS 5/110-6.1(c)(1) (West 2022)). Because the petition was filed after the defendant's first appearance but *before* his release, the defense argued it was untimely. *Id.* ¶ 16. The *Bradford* court disagreed, held the petition was timely, and found the notion that the statute required "the State to wait to file a petition to detain a defendant until he has already been released would be, in a word, absurd." *Id.* ¶ 25.

¶ 34    Finally, *People v. Schwedler*, 2025 IL App (1st) 242157, ¶¶ 3, 5, grappled with the circumstance of a defendant who was released after his arrest for reckless conduct, but held in custody on unrelated probation violations, and then later indicted for involuntary manslaughter and mob action after the victim died of his injuries. The State filed its petition to detain within 21 days of the arraignment on the new indictment, but more than 21 days after his release on the reckless conduct. *Id.* ¶ 6. The *Schwedler* court interpreted section 110-6.1(c)(1) of the Code to allow timely filing of the State's petition, "because the superseding indictment constituted a new case" that reset the 21-day clock. *Id.* ¶ 25. Acknowledging that the Code's plain terms did not address this situation, the court looked at other provisions of the Code and the Criminal Code of

2012 (720 ILCS 5/1-1 *et seq.* (West 2022)). *Schwedler*, 2025 IL App (1st) 242157, ¶ 25. *Schwedler* held that the legislature intended to allow the State to reconsider detention after the victim's death predicated new charges with which the defendant "could not have been charged with at the time of the initial appearance on his first case, [and] based on information learned by the State only after the initial charging and pretrial detention decisions." *Id.* ¶ 28. Consistent with that reading, the court deemed the defendant's arraignment on the indictment his " 'release' for purposes of [a] new case" and therefore, the State's filing of the detention petition nine days later was "well within the *** timeframe." *Id.* ¶ 25.

¶ 35   Here, defendant was in IDOC serving an unrelated sentence, and so was never formally arrested, but he was writted back from prison into the trial court, appeared before the court on the current charges, and was arraigned on the charges in this matter. Based on *Clark*, 2024 IL 130364, ¶ 26, the term "first appearance" refers to a *defendant's* "first appearance" in the matter, and so the arraignment constituted defendant's first appearance under the Code. When defendant appeared before the trial court on January 16, 2025, for arraignment, the State made the decision not to file a petition to detain him pending trial. Applying the logic of *Schwedler* and *Bradford*, this constituted his release. *Schwedler*, 2025 IL App (1st) 242157, ¶ 25 ("While a new 'arrest' may not have occurred because Schwedler was already detained per his probation matters, a new arraignment did [and restarted the 21-day clock]."); *Bradford*, 2023 IL App (1st) 231785, ¶¶ 24-25 (holding that the phrase "release" does not necessitate a "physical release" from custody). Although defendant was released back into IDOC custody, he was in that custody based on an unrelated parole violation, not the charges in the instant matter. *Cf. Schwedler*, 2025 IL App (1st) 242157, ¶ 25 (arraignment on a new case started the clock). Accordingly, we agree with defendant's contention that his first appearance on January 16, 2025, and his subsequent release

back into IDOC custody began the 21-day clock for the State to file a petition. Therefore the State's petition, filed on May 22, 2025, was untimely.

¶ 36                                B. Whether the Section 110-6.1(c)(1) Timing

Provisions Are Directory or Mandatory

¶ 37    Having determined that the State's petition was untimely, we must next consider whether the trial court erred in denying defendant's motion to strike. See *People v. Ziobro*, 242 Ill. 2d 34, 43 (2011) ("Once a violation [of a timing requirement] has been established, the court must determine the consequence of such violation."). The State, citing *Cooper*, 2025 IL 130946, contends that the timing requirement is directory, not mandatory, and the trial court did not err in denying the motion to strike. Defendant, arguing the provision is mandatory, contends that the proper remedy is dismissal of the petition and a remand for a hearing on conditions of release.

¶ 38    *Cooper* interpreted the other subsection of section 110-6.1(c), which deals with the timing of the detention hearing, as opposed to the subsection at issue here concerning the timing of the filing of the petition. See *id.* ¶ 1. In *Cooper*, our supreme court considered whether the failure to comply with the timing requirement in section 110-6.1(c)(2) of the Code (725 ILCS 5/110-6.1(c)(2) (West 2022)) was directory or mandatory. Section 110-6.1(c)(2) provides, in pertinent part, that upon the filing of a petition to detain, the trial court must, upon granting a continuance of a detention hearing, hold a pretrial detention hearing within 48 hours of the defendant's first appearance if the defendant is charged with certain serious offenses, as was the case in *Cooper*. *Cooper*, 2025 IL 130946, ¶ 28. The trial court in *Cooper* held the detention hearing some hours after the 48-hour deadline passed.

¶ 39    *Cooper* noted that "[t]he law presumes that statutory language issuing a procedural command to a government official is directory, rather than mandatory, meaning that the failure to

comply with a particular procedural step does not invalidate the governmental action to which the procedural requirement relates." *Id.* ¶ 33. The court explained that the presumption is overcome and a provision is mandatory *only if* " '(1) negative language in the statute or rule prohibits further action in the case of noncompliance or (2) the right the statute or rule is designed to protect would generally be injured under a directory reading.' " *Id.* (quoting *People v. Geiler*, 2016 IL 119095, ¶ 18). With respect to the first exception to the presumption, the legislature likely intended a consequence to be mandatory when "a statute expressly prescribes a consequence for failure to obey its command or it uses negative language such as 'no such ordinance shall take effect until,' importing that the command shall not be executed in any other manner or time." *Id.* With respect to the second exception, "a statute may be construed as mandatory 'when the right the provision is designed to protect would generally be injured under a directory reading.' " *Id.* (quoting *People v. Delvillar*, 235 Ill. 2d 507, 517 (2009)). *Cooper* noted that "[i]f the requirement does not meet either of the two criteria, it is considered directory, and there is no particular consequence for noncompliance." *Id.*

¶ 40     Applying these criteria to section 110-6.1(c)(2) of the Code, the court in *Cooper* held that the first exception did not apply, noting that the section did not specify a consequence for noncompliance with the timing requirement nor did it contain negative language prohibiting detention or further action in the case of noncompliance. *Id.* ¶ 34; 725 ILCS 5/110-6.1(c)(2) (West 2022). Regarding the second exception, the court took issue with arguments by the defendant that the procedure was designed to protect his liberty interest and "his liberty interest would generally be injured under a directory reading." *Cooper*, 2025 IL 130946, ¶ 36. Rather, the court held the Code's purpose was to reform pretrial practices, while "balanc[ing] the interests of defendants and the safety of the community." *Id.* ¶ 37.

¶ 41 *Cooper* rejected the defendant's argument that the only consequence for a violation of a timely hearing that would vindicate a defendant's rights is release from custody. The court reasoned that strict mandatory construction of section 110-6.1(c)(2) would not achieve the purpose of the statute. *Id.* ¶¶ 37, 39. Instead, it held that reading the section as "directory properly balances the dual purposes of the statute, encouraging prompt hearings while protecting victims and the community from the release of defendants whom the State can prove should be subject to detention." *Id.* ¶ 39. Finding that section 110-6.1(c)(2) is directory, and no specific consequence flows from noncompliance, the court held that a trial court's failure to hold a timely hearing in violation of the section does not result in automatic dismissal of the petition to detain. *Id.* ¶ 40.

¶ 42 This same logic applies to our reading of section 110-6.1(c)(1). Section 110-6.1(c)(1) provides a procedural timing requirement within which the State must file a petition to detain. 725 ILCS 5/110-6.1(c)(1) (West 2022). We begin with a presumption that the statute's language is directory. *Cooper*, 2025 IL 130946, ¶ 33. Regarding the first exception, section 110-6.1(c)(1) does not specify a consequence for noncompliance with the timing requirement. As the State points out, within the Code, the legislature has demonstrated its ability to provide a negative consequence when it wants to. See 725 ILCS 5/110-6.1(i) (West 2022) (requiring defendant's release if a detained defendant is not brought to trial within the 90-day period required by the Code). In this subsection, the statute does not specify that a petition filed beyond the deadline should be dismissed or stricken, or the defendant automatically released, or any other consequence. The absence of a consequence for the violation demonstrates that the legislature intended the provision to be directory. See *Cooper*, 2025 IL 130946, ¶ 34.

¶ 43 Regarding the second exception to the directory presumption, we must consider the purpose of the statute and whether the statutory provision is " ' "intended for the protection of the

citizen, *** and by a disregard of which his rights might be and generally would be injuriously affected." ' " *People v. Robinson*, 217 Ill. 2d 43, 56 (2005) (quoting *People v. Jennings*, 3 Ill. 2d 125, 127 (1954), quoting *French v. Edwards*, 80 U.S. (13 Wall.) 506, 511 (1871)). Section 110-6.1(c)(1), the section at issue here, has the same purpose as section 110-6.1(c)(2), which was construed in *Cooper*. See *Cooper*, 2025 IL 130946, ¶ 39. *Cooper* put it this way:

> "The Pretrial Fairness Act aims to reform pretrial practices by eliminating cash bail and focusing on individualized assessments to ensure both public safety and fair outcomes, while ensuring that defendants are released pretrial unless there is clear and convincing evidence that they pose a risk of flight or a threat to others." (Emphasis omitted.) *Id.* ¶ 37.

¶ 44 A directory reading of section 110-6.1(c)(1) would not defeat defendant's right to a prompt and orderly detention procedure with individualized assessment of dangerousness without "the practice of detaining those charged with a crime who did not pose a threat to their community or a risk of flight but could not afford to pay a money bail." *Id.* But if we were to read section 110-6.1(c)(1) as mandatory, we would certainly "defeat the community's expectation that public safety will be considered." *People v. Cooper*, 2024 IL App (4th) 240589-U, ¶ 29 (Doherty, J., dissenting). This we will not do. "[C]ourts *always* have the obligation to consider the danger that a defendant poses to others and the community when deciding whether pretrial release is appropriate." (Emphasis in original.) *Cooper*, 2025 IL 130946, ¶ 38.

¶ 45                    C. Whether Defendant Established Prejudice

¶ 46 Finally, as the court in *Cooper* observed, "[i]f the timing requirement is directory and no remedy is automatic, a defendant must show that its violation resulted in prejudice." *Id.* ¶ 32 (citing *Ziobro*, 242 Ill. 2d at 45-46). Here defendant was in IDOC custody for parole violations during the period of the State's delay and at the time of the filing of its petition. He argues he was prejudiced

because, had he been promptly detained he would have been able to accrue credit for time served toward any sentence on the instant charges. Defendant cites no authority for this proposition. Presumably he was properly credited for the time he served in prison; that he did not get credit for a sentence not yet imposed for crimes not yet proven or admitted does not seem to have prejudiced him. As the State points out, his original trial date was April 24. Had he not removed the matter from the trial call, his trial would have been concluded before the petition to detain was filed on May 22, 2025. It is difficult to see how the State's timing violation caused any detriment to defendant's legal rights or claims. Having said that, we do not condone the state's violation of this provision, which was included in the Acts by the legislature "to secure order, system, and dispatch" (*French*, 80 U.S. at 511).

¶ 47    We hold the State's failure to file a timely petition should not result in the striking of its petition, and the trial court here did not err in denying defendant's motion to strike.

¶ 48                          D. The State's Petition to Detain

¶ 49    We next turn to defendant's final argument, that the trial court erred in granting the State's petition to detain. Defendant contends that the State failed to prove by clear and convincing evidence that (1) his pretrial release poses a real and present threat to the safety of any person, persons, or the community that (2) cannot be mitigated by conditions less restrictive than detention.

¶ 50    In this case, no live testimony was presented. The parties proceeded solely by proffer. Accordingly, our review of the trial court's factual findings and its detention orders is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. Under *de novo* review, a reviewing court "perform[s] the same analysis that the trial [court] would perform using the proper standards." *People v. Ruhl*, 2021 IL App (2d) 200402, ¶ 69.

¶ 51 Under the Code, factors that the trial court may consider in making a determination of dangerousness, *i.e.*, that a defendant poses a real and present threat to any person or the community, include, but are not limited to, (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense; (2) the history and characteristics of the defendant, including whether he or she has a prior criminal history indicative of violent, abusive, or assaultive behavior; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to any weapons; (8) whether, at the time of the current offense or any other offense, the defendant was on probation, parole, or any other form of supervised release from custody; and (9) any other factors, including those in section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)), the court deems to have a reasonable bearing on the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior. *Id.* § 110-6.1(g).

¶ 52 Defendant argues that the State improperly relied on the nature of the offenses charged, as the facts were insufficient to deny release, and there was no evidence indicating that defendant "is unlikely to comply with court ordered conditions." We disagree.

¶ 53 Here, the transcript from the grand jury proceedings indicates that the nature and circumstances of the instant matter included multiple sex offenses against a minor, who was ten years old. *Id.* § 110-6.1(g)(1), (6). Defendant threatened A.M. that she would be sent away if she reported the abuse. *Id.* § 110-6.1(g)(4). At the time the sexual abuse was first reported, defendant was in his 60s, and unlikely to change as a result of a court order. *Id.* § 110-6.1(g)(5). Defendant's

criminal history included felony weapons charges (establishing that he was known to possess or have access to weapons) (*id.* § 110-6.1(g)(7)), drug-induced homicide, and murder (tending to indicate an assaultive nature) (*id.* § 110-6.1(g)(2)). Finally, at the time the abuse occurred, defendant was on parole, which was later revoked (*id.* § 110-6.1(g)(8)). The State clearly and convincingly proved dangerousness. Defendant's criminal history and the fact that he had his parole revoked for reasons unrelated to the instant offense suggests that defendant is unlikely to comply with court-ordered conditions of release.

¶ 54    Next, defendant argued in his motion for relief that the State failed to meet its burden of proving by clear and convincing evidence that there are no conditions that could mitigate the real and present threat to A.M. or the community based on the specific, articulable facts of the case. Again, we disagree.

¶ 55    In determining which conditions of pretrial release, if any, will ensure the safety of any person or persons or the community, the trial court may consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the real and present threat that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release. *Id.* § 110-5(a)(1)-(5). The history and characteristics of the defendant include his or her "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings" as well as "whether, at the time of the current offense or arrest, [he or she] was on probation, parole, or on

other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." *Id.* § 110-5(a)(3)(A)-(B).

¶ 56 Here, the nature and circumstances of the charged offenses included sexual abuse to a 10-year-old minor. Defendant has a significant criminal history, including murder. Additionally, defendant threatened A.M. if she told an adult about the abuse. Finally, at the time of the current offense, defendant was on parole and had that parole revoked.

¶ 57 In support of his contention that there are less restrictive conditions available than detention to mitigate the risk posed by his release, defendant cites *People v. Martinez-Ortiz*, 2024 IL App (2d) 240102-U. We find *Martinez-Ortiz* readily distinguishable. In *Martinez-Ortiz*, the defendant was accused of multiple sex offenses involving his 13-year-old granddaughter. *Id.* ¶ 4. The defendant had no criminal history and was living in California at the time of his arrest. *Id.* ¶¶ 4, 12. On appeal, we reversed the decision of the trial court ordering the defendant to be detained pending trial, finding, in pertinent part, that because the defendant had no criminal history, there was no evidence of the defendant's failure to comply with court-imposed conditions. *Id.* ¶¶ 29, 35. Further, the State made no proffer of evidence that the defendant would have access to children outside his family, and there was no evidence that the defendant had reoffended in the three years between the offenses occurring and his arrest. *Id.* ¶ 29. In this case, there is evidence that defendant cannot comply with court-ordered conditions, given his significant criminal history and the fact that his parole was revoked. Additionally, defendant proffered that he would be living with a friend if released. The State proffered that defendant could potentially come into contact with other children and reoffend if released, as A.M. was a relative stranger to defendant before he dated her great-grandmother and moved in with her family.

¶ 58    We acknowledge that, under the Code, all persons are presumed eligible for pretrial release (725 ILCS 5/110-2 (West 2022)) and that "the bare allegations that defendant has committed a violent offense are not sufficient to establish" the conditions prong of the State's burden of proof for detention. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18. But applying the factors listed in the Code to the facts at hand, we find that defendant poses a threat to A.M. and the community and there are no less restrictive conditions to mitigate this threat. Hence, we conclude that the State met its burden of proving by clear and convincing evidence that no condition or combination of conditions would mitigate the real and present threat defendant poses to A.M. and the community.

¶ 59                        III. CONCLUSION

¶ 60    In conclusion, we hold that section 110-6.1(c)(1), the timing provision for the filing of a detention petition, was violated in this matter. But we interpret the provision as directory, starting with the presumption that it is so and finding neither exception to the presumption applicable, and therefore no particular consequence is automatic. Because defendant established no prejudice, given that he was already imprisoned on an unrelated matter, the trial court did not err in denying the motion to strike. The petition to detain was properly granted. For the reasons set forth above, we affirm the judgment of the circuit court of Kane County.

¶ 61    Affirmed.

*People v. Williams*, 2025 IL App (2d) 250370

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 24-CF-2627; the Hon. John A. Barsanti, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Elizabeth M. Crotty, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |