2024 IL App (2d) 230366-U
No. 2-23-0366
Order filed January 8, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-2071 |
| KEVIN HILTON, | ) ) ) | Honorable Salvatore LoPiccolo Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Kennedy concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not abuse its discretion in granting the State's petition for pretrial detention.

¶ 2   On September 27, 2023, the defendant, Kevin Hilton, was charged with three counts of stalking (720 ILCS 5/12-7.3(a)(1), 7.3(a)(2), 7.3(a-3)(1) (West 2022)), a felony, and two counts of harassment by telephone (*id.* § 26.5-2(a)(2)). The circuit court of Kane County granted the State's verified petition to deny the defendant's pretrial release pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). The defendant appeals. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     This appeal is brought pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date of Act as September 18, 2023). The Act abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022).

¶ 5     In Illinois, all persons charged with an offense are eligible for pretrial release. *Id.* §§ 110-2(a), 110-6.1(e). Pretrial release is governed by article 110 of the Code as amended by the Act. *Id.* § 110-1 *et seq.* Under the Code, as amended, a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e).

¶ 6     Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)); (2) the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)); and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)).

---

[1]The Act has been referred to as the "SAFE-T Act" or the "Pretrial Fairness Act." Neither of those names is official, as neither appears in the Illinois Compiled Statute or the public act. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

¶ 7    In his appeal, the defendant argues that the State did not show, by clear and convincing evidence, that any of these three requirements was met. "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services,* 2023 IL 127712, ¶ 74.

¶ 8    The defendant first argues that the State did not present clear and convincing evidence that he committed the charged offenses. At the detention hearing, the State argued that pretrial detention was warranted because there were three similar cases pending against the defendant that involved stalking and harassment of the same victim. Despite no contact orders in the other cases, the defendant continued to contact the victim and the communications were becoming more alarming. The State argued that there were no conditions that could mitigate the threat the defendant posed to someone's safety.

¶ 9    In support, the State presented a police department synopsis sheet signed by the police officer who authored it. The report indicated that the victim had received threatening messages from the defendant. The messages were sent to her cell phone number, but she initially did not receive the messages because she had the defendant's number blocked. However, the messages were forwarded to an "imessage" application on her computer. On August 21, 2023, she turned on her computer for the first time in a long time, saw the messages, and contacted the police. On August 26, 2023, the police officer went to the victim's home and viewed all the messages. There were a "massive amount of text messages" dating back to July 29, 2023. The officer received a search warrant to trace the source of the messages sent to the victim.

¶ 10    The report further indicated that, after the officer started his investigation on August 26, the defendant continued to send messages to the victim threatening to kill her and her family and stating that he would hire someone to shoot her in the head. The defendant also sent several photos

of himself to the victim, which the officer viewed. Although the results of the search warrant were still pending, the officer believed there was clear and convincing evidence the subject messages were coming from the defendant. Specifically, the messages had the same *modus operandi* as other messages that resulted in previous arrests of the defendant. The officer noted that the defendant had been arrested on three previous dates and had three cases pending for stalking and harassment of the same victim as in the present case. Despite his previous arrests, the defendant continued to stalk the victim and was threatening to kill the victim and her family. The threatening nature of the defendant's messages had been escalating over time. Further, despite prior no contact orders, the defendant continued to harass and stalk the victim, thus demonstrating that he had no regard for conditions of release.

¶ 11    In this case, the qualifying offense is stalking (725 ILCS 5/110-6.1(a)(2) (West 2022)). To ultimately prove the offense of stalking under section 12-7.3(a) at trial, the State must show that the defendant "knowingly engage[d] in a course of conduct directed at a specific person, and he or she [knew] or should [have known] that this course of conduct would cause a reasonable person to: (1) fear for his or her safety or the safety of a third person; or (2) suffer *** emotional distress." 720 ILCS 5/12-7.3(a)(1), 7.3(a)(2) (West 2022). To prove stalking under section 12-7.3(a-3)(1), the State must prove beyond a reasonable doubt that a defendant "knowingly and without lawful justification, on at least 2 separate occasions" followed or placed another person "under surveillance" and "at any time transmit[ted] a threat of immediate or future bodily harm, sexual assault, confinement or restraint and the threat is directed towards that person." 720 ILCS 5/12-7.3(a-3)(1) (West 2022). Based on the police report synopsis, that the defendant sent messages threatening to kill the victim and her family and hire someone to shoot her in the head, the State presented clear and convincing evidence that that the defendant committed the charged qualifying

offenses. The defendant argues that the synopsis alone was insufficient to establish clear and convincing evidence. This argument is without merit. Section 110-6.1(f)(2) of the Code (725 ILCS 5/110-6.1(f)(2) (West 2022)) permits the parties to a detention hearing to present evidence by way of proffer based on reliable information. The police synopsis detailed an investigation where the officer spoke with the victim and viewed the communications. The synopsis also detailed the defendant's previous cases involving the same victim. The trial court could thus reasonably conclude that the State presented clear and convincing evidence.

¶ 12     The defendant next argues that the State failed to meet its burden of proving by clear and convincing evidence that he poses a real and present threat to the safety of the victim. He argues that the evidence only shows that he sent text messages and there was no evidence of intent to actually carry out his threats or do anything other than send text messages. In making a determination of a defendant's dangerousness, a trial court may consider, among other things: (1) the nature and circumstances of any charged offense, including whether it is a crime of violence or a sex crime, or involved a weapon; (2) the defendant's characteristics and history, including any criminal history indicative of violent, abusive, or assaultive behavior, and any psychological history indicative of a violent, abusive, or assaultive nature, and the lack of any such history; (3) the identity of the person believed to be at risk from the defendant and the nature of the threat; (4) statements by the defendant and the circumstances of such statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of any victim or complaining witness; (7) the defendant's access to any weapon; (8) whether the defendant was on probation, parole, or the like at the time of the charged offense or any other arrest or offense; and (9) any other factors that have a reasonable bearing on the defendant's propensity for violent, abusive, or assaultive behavior, or the lack of such behavior. *Id.* § 110-6.1(g).

¶ 13    Factual findings, such as a trial court's determination that a defendant posed a real and present threat to the safety of any person, are generally reviewed deferentially and will not be reversed unless they are against the manifest weight of the evidence.[2]  See *Indeck Energy Services, Inc. v. DePodesta,* 2021 IL 125733, ¶ 56.   A finding is not against the manifest weight of the evidence unless the "opposite conclusion is clearly evident." *Id.*

¶ 14    In the present case, the opposite conclusion is not clearly evident.  The evidence provided by the State indicated that there were three other pending cases involving the defendant and the same victim.  Despite previous no contact orders, the defendant continued to send communications to the victim.  The defendant's most recent communications included a threat to kill the victim and her family.  Based on this evidence, the trial court's determination that the defendant posed a real and present threat to someone's safety was not against the manifest weight of the evidence.

¶ 15    The defendant's final argument on appeal is that the State failed to prove that no conditions or combination of conditions could have mitigated the risk of further violence and the trial court failed to adequately consider alternatives to pretrial detention.  Under section 110-6.1(g)(3) of the Code, an order for pretrial detention must be based on, among other things, clear and convincing evidence that "no condition or combination of conditions" of pretrial release can mitigate the real and present threat to safety posed by the defendant. *Id.* § 110-6.1(g).  If the trial court finds that the State proved a valid threat to someone's safety or the community's safety, it must then

---

[2]Although there may be instances in which a trial court's factual findings are reviewed *de novo* because of the nature of the evidence presented (see *Addison Insurance Co. v. Fay,* 232 Ill. 2d 446, 453 (2009); but see *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 38), neither party contends that is the case here.

determine what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community ***." *Id.* § 110-5(a). In making this determination, the trial court should consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the defendant's release; and (5) the risk that the defendant will obstruct or attempt to obstruct the criminal justice process. *Id.* No single factor is dispositive. *Id.* As with the finding of dangerousness, we review the trial court's finding, regarding whether the imposition of conditions on a defendant's pretrial release would mitigate the safety risk posed by the defendant, under the manifest weight of the evidence standard. *Indeck Energy Services,* 2021 IL 125733, ¶ 56.

¶ 16  Here, the trial court expressly considered the nature of the charged offenses, the defendant's pending cases also involving the same victim, and that prior conditions had been imposed on the defendant but he continued to send the victim emotionally disturbing and threatening communications. The defendant argues that the trial court erred because, at the detention hearing, the defendant stated that he had plans to begin inpatient medical treatment to address his mental health issues and the trial court could have imposed such a condition as an alternative to detention. However, even in light of this proffer, we cannot conclude, based on the continued and escalating harassment of the victim, that the trial court's determination that no pretrial release conditions could adequately protect the victim's safety was against the manifest weight of the evidence. *Id.*

¶ 17  For all of these reasons, the trial court did not abuse its discretion by granting the State's motion for pretrial detention. The judgment of the circuit court of Kane County is affirmed.

¶ 18    Affirmed.