2026 IL App (1st) 252413B-U

FOURTH DIVISION
Order filed: May 7, 2026

No. 1-25-2413B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| | ) | Nos. 25 DV 7369301, |
| v. | ) | 25 CR 0924001 |
| | ) | |
| | ) | Honorable |
| DANIELLE NOREY, | ) | Sabra L. Ebersole, |
| | ) | Michael N. Pattarozzi, |
| Defendant-Appellant. | ) | William G. Gamboney, |
| | ) | Judges, presiding. |

JUSTICE QUISH delivered the judgment of the court.
Presiding Justice Navarro and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The State was not required to file a new petition for pretrial detention after filing a superseding information when the defendant was already detained on the initial charges and the new charges were not based on new facts or conduct. The circuit court's order granting the State's petition for pretrial detention is affirmed.

¶ 2    After defendant Danielle Norey was arrested for domestic battery, firing an unserialized firearm, and threatening to kill her boyfriend and his family, the State petitioned to have defendant

detained pending trial under section 110-6.1 of the Code of Criminal Procedure (725 ILCS 5/110-6.1). The circuit court granted the petition. Defendant now appeals that ruling, contending that the State failed to comply with the timing requirements of section 110-6.1 when it did not file a new petition after filing a superseding information and the circuit court erred in finding that the evidence was sufficient to warrant pretrial detention. For the following reasons, we affirm.

¶ 3    On July 22, 2025, in case number 25DV7369301, the State filed felony complaints charging defendant with two counts of aggravated unlawful possession of a weapon and one count of possession of an unserialized firearm. The State also filed misdemeanor complaints charging defendant with one count of domestic battery causing bodily harm, three counts of aggravated assault with a deadly weapon, and one count of theft. The State filed a petition for pretrial detention seeking to have defendant detained pending trial under section 110-6.1(a)(4) on the grounds that she was charged with the detainable offense of domestic battery and posed a real and present threat to the safety of the complaining witnesses or the community.

¶ 4    The court held a hearing on the petition that same day, where the State proffered that on July 20, 2025, police responded to a call of a person with a gun. When they arrived, police spoke with complaining witness Jamell Macintosh who told them that he had a verbal altercation with defendant, his girlfriend. Jamell reported that he and defendant had been smoking marijuana and defendant had taken Xanax. Defendant became irate, and Jamell asked her to leave his apartment. Defendant became more upset and began throwing and breaking items throughout the apartment. Defendant also broke a hole in a wall. Jamell stated that defendant bit his right index finger and then produced a firearm and fired one shot in the living room. Jamell feared he would be shot.

Defendant then took Jamell's black Nike backpack, which contained Jamell's medication. Police did not see a bullet hole or find any spent cartridge casings in the house.

¶ 5    Sometime later that day, police were again dispatched to the same location, having been informed that defendant had returned. When officers found her, defendant was sitting on a front porch at 6800 South Cornell Avenue. They observed a handgun in plain view next to defendant. The firearm was a blue-steel semiautomatic handgun with a large extended magazine containing 31 rounds, plus 1 live round in the chamber. The firearm did not have a serial number. Police detained defendant and confirmed that she possessed a valid FOID and CCL. Police also found a live 9mm round in defendant's purse. Jamell positively identified defendant and his Nike backpack, which was at the scene.

¶ 6    While on scene, police were approached by additional complaining witnesses Shanta and Aisha Macintosh, Jamell's mother and sister. Shanta told the officers that defendant was sitting on the front porch when she and Aisha arrived. Shanta asked defendant to return Jamell's medication. Defendant replied that Shanta should plan her own funeral, then reached behind the brick wall on the porch, produced her firearm, and pointed it at Shanta and Aisha, placing them in fear of being shot. Shanta and Aisha fled in their car and returned after police were on the scene. A search of the Nike backpack showed that it did not contain Jamell's medication. After receiving her *Miranda* rights, defendant told the police that her uncle sold her the gun.

¶ 7    The court found probable cause to support the charges of domestic battery, aggravated assault with a deadly weapon, theft, and possession of an unserialized firearm. The State then added that defendant's prior criminal history included a 2003 battery conviction for which she completed one year of supervision, a 2005 battery conviction for which she completed two years

of supervision, and a 2008 aggravated domestic battery charge that was ultimately nol-prossed. However, a public safety assessment completed by pretrial services reflected that defendant did not complete her supervision satisfactorily for one of the battery convictions and that defendant also had a 2019 conviction for criminal mischief in Nebraska, for which she served seven days in jail, and a 2018 conviction for operating a vehicle without a license, for which she received a fine.

¶ 8     The State argued that Jamell's allegation that defendant bit his finger was sufficient to establish that defendant committed the detention-eligible offense of domestic battery. The State further contended that defendant posed a real and present threat to the complaining witnesses because she escalated a verbal argument into a physical altercation by biting Jamell's finger, caused property damage, produced a loaded firearm with an extended magazine, and threatened to kill Shanta and Aisha with that firearm.

¶ 9     The State also informed the court that, while in custody for these offenses, defendant called Jamell and left a threatening voicemail message. The State read an automated transcription of the call: "I'm glad you was told my husband was cheating, now I can blow your brains out without even worrying about it and I'm gonna start with your sister and your mother f***ing mamma." Jamell identified the caller's voice as defendant's.

¶ 10     Finally, the State argued that no condition or combination of conditions could mitigate the risk that defendant posed because electronic monitoring and home confinement are court orders which require strict adherence. The State contended that defendant's boldness in calling Jamell from jail demonstrated that "she either has an inability or unwillingness to abide by Court orders since she" so blatantly ignored law enforcement while in police custody. The State also argued

that Jamell could not be reasonably expected to live within the small bubble of safety that GPS monitoring would afford and that GPS monitoring also would not protect Shanta and Aisha.

¶ 11     Defendant's counsel responded that defendant was 41 years old and had lived in Chicago for two years after living in Nebraska, where she worked for the State and provided help for people with disabilities. She is the primary provider for 10 children, 2 of whom have autism and 6 of whom she adopted after her best friend passed away. Defendant volunteers at her church every Sunday.

¶ 12     Defendant's counsel also provided defendant's version of the altercation with Jamell and the aftermath. According to her counsel, Jamell invited defendant to his home to pick up money that he owed her. Defendant and Jamell hung out for a while, then defendant wanted to get her money and leave. Jamell refused to give her the money and "start[ed] beating on her." Defendant bit Jamell's finger as he was punching her and then left. Defense counsel also alleged that the location where police first encountered her was not at Jamell's residence, but at a different house. Counsel further claimed that defendant told police she never fired the gun and offered to take a gunshot residue ("GSR") test. Counsel noted the lack of bullet holes and cartridge cases as evidence that she never fired her weapon and asserted that police did not observe any bite marks on Jamell's finger. The police inventory report showed everything in the Nike backpack was hers and there was no medication. Counsel argued that GPS and electronic monitoring should be considered because defendant and Jamell do not live near each other.

¶ 13     The State also filed a petition for an order of protection.  The court granted the petition after questioning Jamell under oath. Jamell also testified that he was fearful of further abuse.

¶ 14 The court found that, based on the allegations in the criminal complaints, the State had proven by clear and convincing evidence that the proof was evident or the presumption was great that defendant committed domestic battery. The court further found that, although it was concerned by the lack of bullet holes or cartridge cases at the scene, the State had met its burden and shown by clear and convincing evidence that defendant posed a real and present threat to the safety of any person or persons in the community based on the specific articulable facts of the case. On that issue, the court specifically found that defendant had threatened the complaining witnesses; defendant had a criminal history that is indicative of violent, abusive, or assaultive behavior; defendant has mental health issues for which she is taking prescription medication; and the threat posed to the complaining witnesses is "severe and significant," as evidenced by defendant's specific threats against the lives of three different people and her possession of a firearm with no serial number. The court also noted that the voicemail message from jail was another specific threat that was consistent with her other threats.

¶ 15 Addressing whether there were any conditions or combination of conditions that could mitigate the threat that defendant poses, the court first noted that defendant is the primary caretaker for multiple children, has a long history of employment, has ties to the community, and does not have any history of failing to appear. The court also noted that the nature and seriousness of the real and present threat was severe and observed that defendant's threats against the lives of the complaining witnesses, both at the time of the altercation and in the voicemail message, were "some of the most severe threats that this Court sees" because she threatened to use a deadly weapon against multiple people. The court also addressed the statutory factors unique to acts of domestic battery and found that the incident between defendant and Jamell involved harassment

or abuse, defendant has a history of domestic violence, defendant has a history of other criminal acts, the court had concerns about defendant's mental health, defendant is presently a threat to multiple people, and defendant has access to deadly weapons. The court concluded by finding that "the nature and circumstances of this case indicate that the threat" to the complaining witness and his family members is severe, and that detention is necessary to prevent defendant from carrying out that threat. The court also found there was no condition or combination of conditions the court could order that would protect the victim and his family members. Accordingly, the court granted the State's petition for pretrial detention.

¶ 16    On August 8, 2025, in case number 25CR0924001, the State filed a superseding information charging defendant with two counts of aggravated unlawful possession of a weapon and two counts of aggravated assault, each relating to defendant's alleged threats against Shanta and Aisha on July 20, 2025. The information did not include a charge for domestic battery against Jamell.

¶ 17    At her arraignment before a new judge on the new charges on August 22, 2025, defendant asked the court to review the necessity of her continued detention. Counsel for defendant specifically confirmed that the request was not a motion for relief, but instead a request for routine review of detention. The State presented a factual proffer that was substantially similar to the one given at defendant's initial detention hearing and added only that Jamell had since decided not to pursue charges against defendant. Defense counsel admitted that defendant left the threatening voicemail message on Jamell's phone. Counsel explained that defendant did not intend to carry out the threat and "was angry that she was in this position because she was defending herself and made an irrational and hasty decision to make this phone call and make that threat that she now

regrets." Counsel alleged that defendant had been actively taking classes and obtaining certificates while in jail, and he added that defendant's family was about to be evicted from their home and her husband was about to lose his job. Counsel emphasized the non-violent nature of defendant's criminal history and the fact that the current charges are probationable offenses. Counsel also asserted that defendant acted in self-defense. Based on those considerations, counsel asked the court to release defendant from detention with the conditions that she be placed on GPS and electronic monitoring.

¶ 18 The court ordered defendant to remain detained, finding that the State's proffer proved by clear and convincing evidence that defendant committed the charged offenses and noting that defendant was in possession of a ghost gun with an extended magazine, she was a clear and present danger to the complaining witnesses and the general public, and no conditions could mitigate that threat.

¶ 19 On October 14, 2025, defendant filed a motion for relief under Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). She primarily argued that the State failed to prove by clear and convincing evidence that she committed a detainable offense. Specifically, she argued that Jamell's story that she discharged a firearm was contradicted by the lack of bullet holes or cartridge cases at the scene, and there was no physical evidence suggesting that she threatened anyone with the firearm. She also alleged that she told police that she never discharged the firearm and offered to submit to a GSR test, but police never conducted such a test. Defendant further contended that Shanta's and Aisha's stories that she threatened them and took Jamell's medication were contradicted by the fact that no medication was found in the backpack that they claimed defendant took from Jamell.

¶ 20 Defendant also argued that the State failed to prove that her release would pose a real and present threat to the complaining witnesses or the community. She again argued that she was 41 years old and did not have any significant criminal background; she possessed a valid FOID and CCL; she cares for ten children, including three adults and seven minors, five of whom have developmental disabilities; her husband is unable to financially support and otherwise care for their children without her help; her family has been evicted from their apartment as a result of her incarceration; and she had previously been a state employee and, prior to her detention, ran a candy store out of her home.

¶ 21 Defendant also contended that the State failed to prove that no conditions could protect the complaining witnesses or the community, noting that being charged with violent offenses, standing alone, is not enough to establish that there are no suitable conditions allowing for release. She asserted that electronic home monitoring and GPS could mitigate any purported threat.

¶ 22 On October 16, 2025, the circuit court, with another judge presiding, held a hearing on defendant's motion for relief. Defendant first noted that she was contesting only the initial detention decision from July 22, 2025. She then reiterated her arguments from her written motion. On this latter point, defendant argued that video from the responding police officers' body-worn cameras shows that Shanta and Aisha gave inconsistent statements regarding whether they walked or drove away after defendant allegedly threatened them. Defendant also alleged that Shanta stated in the body camera video that she and Aisha returned to the scene after being threatened and that defendant then threatened them again. Defendant contended that this allegation that they returned to the scene after she allegedly threatened to kill them did not make logical sense and undermined their version of events.

¶ 23 The court denied defendant's motion, finding that the State had proven by clear and convincing evidence that defendant committed the detainable offense of aggravated unlawful possession of a weapon, defendant's actions demonstrated that she poses a real and present threat to the safety of the complaining witnesses or the community, and electronic monitoring was not sufficient to mitigate the threat that defendant poses. This appeal follows.

¶ 24 First, the State argues that we do not have jurisdiction to review the circuit court's July 22, 2025, detention order because defendant's notice of appeal "only lists October 16, 2025, as the date of order on Motion for Relief and not the first appearance hearing." We reject this argument. Defendant's notice of appeal lists "July 10," August 22, and October 16, 2025, as the "Date(s) of Hearing(s) Regarding Pretrial Release." While that list does not include the July 22 hearing, it is clear that the "July 10" notation is a typo or scrivener's error, given that the incident that initiated these proceedings did not occur until July 20. This conclusion is supported by the Statement of the Case in defendant's brief, which states, "[t]he order being appealed was entered on July 22, 2025." Further, defendant's motion for relief expressly challenged the July 22, 2025, detention decision.

¶ 25 It is well-established that a notice of appeal is to be "liberally construed" and "'will confer jurisdiction on an appellate court if the notice, when considered as a whole, fairly and adequately sets out the judgment complained of and the relief sought so that the successful party is advised of the nature of the appeal.'" *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 22 (quoting *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433 (1979)). When viewed as a whole, defendant's notice of appeal fairly and adequately described the judgments appealed from and the relief sought. Accordingly, defendant's notice of appeal was sufficient to confer this court with jurisdiction over the July 22, 2025, order granting the State's petition for pretrial detention.

¶ 26    Defendant first raises a procedural challenge to her detention and asserts that the State failed to comply with the timing requirements of the Code after it filed a superseding information in case number 25CR0924001. Defendant contends that, after filing an information initiating a new case, the State was required to file a new petition for pretrial detention, which it did not do. The State responds that a new petition is not required when the charges in the superseding information arise from the same conduct as the original charges and the defendant is already detained. Because this issue was not raised in her motion for relief and has therefore been waived (see Ill. S. Ct. R. 604(h)(2)), defendant asks that we review the issue as a claim of ineffective assistance of counsel. See, e.g., *People v. Carter*, 2024 IL App (5th) 230977-U, ¶ 24 (analyzing a claim of ineffective assistance of counsel in a pretrial detention appeal). Regardless of whether the issue was waived and how we review it, we agree with the State that it was not required to file a new detention petition following the filing of the superseding information.

¶ 27    In support of her argument, defendant relies on *People v. Schwedler*, 2025 IL App (1st) 242157. There, the defendant was initially charged with reckless conduct with great bodily harm. *Id.* ¶ 3. At his first appearance, the State did not seek to have the defendant detained pending trial, and he was released with conditions. *Id.* ¶ 4. After the victim later died, a grand jury indicted the defendant on involuntary manslaughter and mob action. *Id.* ¶ 5. The defendant was arraigned on the new charges and the State then filed a petition for pretrial detention. *Id.* ¶¶ 5-6. The defendant moved to strike the petition, arguing that, because his initial charge of reckless conduct with great bodily harm was a detainable offense, the State was required to file a petition for pretrial detention within 21 days of his initial release and the superseding indictment did not reset that clock because the new charge of involuntary manslaughter arose from the same incident. *Id.* ¶ 8. After the circuit

court granted the State's petition and denied the defendant's motion to strike, this court reviewed the issue and held that "the State's petition was timely because the superseding indictment constituted a new case that alleged a new, detainable offense, for which the Code then permitted the State to determine whether to request pretrial detention at either [the defendant's] first court appearance or within 21 days of his release." *Id.* ¶ 25. In reaching that conclusion, this court observed that the filing of an indictment commences a new proceeding (*id.*) and that the Code also provides that "the State may seek to file a second or subsequent petition for pretrial detention if it can demonstrate it learned of 'new facts not known or obtainable at the time of the filing of the previous petition.'" *Id.* ¶ 25 (quoting (725 ILCS 5/110-6.1(d)(2) (West 2022)).

¶ 28     Based on *Schwedler*, defendant argues that the filing of the superseding information in case number 25CR0924001 commenced a new proceeding and required the State to file a detention petition at her initial appearance on the new charges or within 21 days thereafter, neither of which it did.

¶ 29     The State counters with another case with virtually identical facts to this one. In *People v. Boucher*, 2026 IL App (1st) 252412, ¶ 3, the defendant was charged by felony complaint with disorderly conduct—making a false bomb threat—in case number 25DV7461801. The State filed a petition for pretrial detention, which the court granted. *Id.* ¶¶ 3, 11. One month later, the State filed a superseding indictment under case number 25CR1057601 bringing new charges based on the same conduct. *Id.* ¶ 13. The defendant filed a motion for relief, asserting, among other things, that the State had failed to file an updated petition when it indicted him on the new charges. *Id.* ¶ 14. After the defendant's motion was denied, this court held that the State was not required to file a new detention petition after it filed the superseding indictment. *Id.* ¶ 34. This court found

*Schwedler* distinguishable because it addressed a situation in which the State was allowed to file a subsequent detention petition when it learned of new facts, specifically the death of the victim, that were not known at the time the initial charges were filed and an initial detention petition would have been due. *Id.* ¶¶ 33-34. This court further observed that "[t]hose are not the circumstances presented in the case at bar," where the offense alleged in the initial felony complaint was a detainable offense and thus the State's detention petition was properly filed at that time, "the State did file a pretrial detention petition based on the initial felony complaint, which was granted," and "[t]he later indictment was not based on any new facts but was based on the same alleged conduct; thus it would have been improper for the State to seek to file an additional detention petition, particularly where defendant was already detained." *Id.* ¶ 34. Accordingly, this court held that the State was not required to file a subsequent or updated detention petition based on the later indictment. *Id.*

¶ 30    The present case is materially indistinguishable from *Boucher*. Defendant was charged with a detainable offense in the DV case and the State filed a petition for pretrial detention, which was granted.[1] The State then filed a superseding information based on the same conduct and without reliance on any new facts. Thus, as in *Boucher*, when defendant was already detained and the superseding information did not rely on facts not known or obtainable at the time of the filing of the previous petition, the State was not required to file a new detention petition following the superseding information. Indeed, while *Schwedler* stands for the proposition that the State may be *allowed* to file a new petition after filing a superseding information, *Boucher* demonstrates that

---

[1] Here, defendant concedes she was charged with detainable offenses in both the DV and CR cases.

the State is not *required* to do so when the defendant is already detained. Accordingly, we reject defendant's argument.

¶ 31    Defendant's next two arguments concern the substantive statutory factors governing whether a defendant may be detained pending trial. All defendants are presumed to be eligible for pretrial release. 725 ILCS 5/110-2(a); 725 ILCS 5/110-6.1(e). To have a defendant detained awaiting trial, section 110-6.1(e) of the Code provides, in relevant part, that the State must prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense; (2) the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, by conduct which may include a forcible felony; and (3) no condition or combination of conditions can mitigate the real and present threat posed by the defendant to the safety of any person or persons or the community, based on the specific articulable facts of the case, for certain offenses, or the defendant's willful flight.  725 ILCS 5/110-6.1(e)(1)-(3). A trial court may order a defendant detained pending trial if it finds that the State has met its burden as to all three propositions. *People v. Morgan*, 2025 IL 130626, ¶ 41. Defendant challenges only the initial detention decision on July 22, 2025, and asserts that the State failed to establish the second and third of those elements.  Defendant does not challenge the first element.

¶ 32    When the State presents evidence by proffer rather than by live testimony, as in this case, we review the circuit court's decision to detain the defendant *de novo*. *Morgan*, 2025 IL 130626, ¶ 54. We review the evidence proffered by the State and any other documentary evidence with "no deference to the decision of the circuit court." *Id.* ¶ 22.

¶ 33    Defendant first contends that the court erred in concluding that the State proved that she posed a real and present threat to any person or the community. She argues that she only threatened Shanta and Aisha when the women confronted her and that she left the threatening voicemail message when she was upset and angry and had no intention of carrying out the threat. Defendant also notes that she completed anger management and domestic violence classes while in jail and that she has not made any threats since July 2025. Defendant further argues that the court should not have considered her possession of an unserialized firearm in its analysis because she was not charged with that offense and she points out that her criminal history did not include any violent felonies.

¶ 34    In its ruling, the circuit court discussed the relevant factors in section 110-6.1(g) of the Code and found that the nature and circumstances of the offense charged encompassed a bite to Jamell's finger as well as allegations of threats of physical harm to Jamell and his family members. Further, the court found that defendant's criminal history was indicative of violent, abusive, or assaultive behavior, defendant had mental health issues for which she was taking prescribed medication, and defendant's threat to the complaining witnesses was "severe and significant" because she threatened to kill three people (telling one of them to "plan their own funeral") and she possessed an illegal firearm. These were all permissible factors for the court to consider. See 725 ILCS 5/110-6.1(g). Each of those individual findings was supported by the State's proffer, including its allegations that defendant threatened to kill each of the three complaining witnesses to their faces while pointing a gun at them, made the same threat again in a voicemail message while in police custody, has prior convictions for battery, and has demonstrated an ability to access illegal weapons. Even considering that defendant had no prior felony convictions, we find that the

State established by clear and convincing evidence that defendant posed a real and present threat to the complaining witnesses and the community. See, *e.g.*, *People v. Hilton*, 2024 IL App (2d) 230366-U, ¶ 14 (finding that a real and present threat existed when there were three other pending cases involving the defendant and the same complaining witness, the defendant continued to threaten the complaining witness despite a no-contact order, and the defendant's most recent communications included a threat to kill the complaining witness). Further, although defendant argues that she was not charged with possession of an unserialized firearm, the State did charge her with such a crime in the DV case.

¶ 35     Finally, defendant asserts that the court erred in finding that no condition or combination of conditions could mitigate the threat that she poses. Defendant asserts that the issue is not whether there are any conditions that can eliminate the threat, but rather whether there are conditions that can mitigate it. See *People v. Martinez-Ortiz*, 2024 IL App (2d) 240102-U, ¶ 31. She also contends that certain statements made by the court at the subsequent review hearing on August 22, 2025, and at the October 16, 2025, hearing on her motion for relief regarding the insufficiency of electronic monitoring contradict the presumption of pretrial release for all defendants. She then argues that the facts of the case do not demonstrate that there are no potential conditions that could mitigate the threat that she poses, noting that there was no evidence that she lived near the complaining witnesses or ever failed to appear in court, her criminal background consisted of only misdemeanor offenses, and she was the primary caregiver for 10 children, several of whom have special needs. She contends that GPS and electronic home monitoring could mitigate any threat.

¶ 36 First, to the extent that defendant challenges statements that the court made at subsequent hearings on August 22 and October 16, 2025, we note that her present challenge is to the initial detention decision on July 22, 2025, only, a ruling that was made by a different judge who did not preside over the subsequent hearings and did not make the statements that she asserts were erroneous. Accordingly, those statements regarding the insufficiency of electronic monitoring are irrelevant to our consideration of the propriety of the court's initial detention decision.

¶ 37 Second, the court's conclusion that there were no conditions or combination of conditions that could mitigate the threat the defendant poses to the complaining witnesses was not erroneous. In determining which, if any, conditions of pretrial release will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of defendant's compliance with all the conditions of pretrial release, the Code requires the circuit court to consider such matters as: (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a) (West 2024).

¶ 38 The court found that defendant's threats to kill the complaining witnesses were "some of the most severe threats that this Court sees." The court also noted that it had concerns about defendant's mental health, defendant has access to deadly weapons, defendant possessed an unserialized firearm, and defendant threatened to kill the complaining witnesses even after she had been arrested. Ultimately, the court concluded that, although defendant is the primary caretaker

for multiple children, has a long history of employment, has ties to the community, and does not have any history of failing to appear, "the nature and circumstances of this case indicate that the threat to [the complaining witnesses] is severe[] and that detention is necessary to prevent the defendant from carrying out that threat." Given the nature of defendant's threats, particularly the fact that she continued to threaten the lives of the complaining witnesses from jail, as well as her prior battery convictions, her demonstrated ability to access illegal firearms, and Jamell's testimony that he remained fearful of her, we agree that there are no conditions or combination of conditions that can mitigate the threat that defendant poses to the complaining witnesses. See *People v. Tooks*, 2024 IL App (4th) 240259-U, ¶ 21 (finding that the circuit court's ruling that no conditions could mitigate the threat posed by the defendant was not an abuse of discretion when the defendant made multiple threats to kill the complaining witness, represented that his threats were serious, had a prior conviction for domestic battery, had recently been the respondent in an order of protection in which the complaining witness was the protected party, and the complaining witness indicated there was a history of domestic violence between them).

¶ 39    For the foregoing reasons, we affirm the circuit court's order granting the State's petition for pretrial release.

¶ 40    Affirmed.